# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**SUNKIST GROWERS, INC.,**

          Appellant,

**v.**

**INTRASTATE DISTRIBUTORS, INC.,**

          Appellee.

**Appeal No. 2024-1212**

**Re: TTAB Opposition No. 91254647**

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit was timely filed by Appellant on November 29, 2023, in the United States Patent and Trademark Office (USPTO), in connection with the above-identified opposition proceeding. Pursuant to 15 U.S.C. § 1071(a)(3) and Federal Circuit Rule 17(b)(1), the USPTO today is forwarding, to counsel for Appellant and Appellee, a certified list of documents comprising the record in the USPTO.

Respectfully submitted,

KATHERINE K. VIDAL
Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office

Date: January 9, 2024      By: */s/ Orchideh Rushenas*
                       Orchideh Rushenas
                       Paralegal Specialist
                       Mail Stop 8, P.O. Box 1450
                       Alexandria, Virginia 22313-1450
                       571-272-9035

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing NOTICE FORWARDING CERTIFIED LIST has been served via electronic mail on counsel for Appellant and Appellee, this 9th day of January, 2024, as follows:

Leigh Ann Lindquist
SUGHRUE MION PLLC
2000 Pennsylvania Ave., NW, Suite 9000
Washington, DC 20006
Email: llindquist@sughrue.com

Michael O. Cummings
CUMMINGS, MCCLOREY, DAVIS &
   ACHO, P.C.
1185 Avenue of the Americas, 3rd Floor
New York, NY 10036
Email: mcummings@cmda-law.com

*Attorney for Appellant*

*Attorney for Appellee*

By: /s/ *Orchideh Rushenas*
     Orchideh Rushenas
     Paralegal Specialist

## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

January 9, 2024
_____
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries in the file of the trademark opposition proceeding identified below.  The lists were taken from the TSDR and TTABVUE electronic databases of the United States Patent and Trademark Office and comprise the record before this Office.

*Sunkist Growers, Inc.*

*v.*

*Intrastate Distributors, Inc.*

**Opposition No. 91254647**

Serial No. 88647761

**Mark:  KIST**

Serial No. 88647766

**Mark:** 

By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Orchideh Rushenas*
_____
*Certifying Officer*

**PROSECUTION HISTORY OF SERIAL NO. 88/647,761**

**OPPOSITION NO. 91254647**

**Federal Circuit Appeal No. 2024-1212**

**Mark:  KIST**

| DATE | DESCRIPTION |
|------|-------------|
| 10/09/2019 | Application |
| 10/09/2019 | Drawing |
| 01/23/2020 | XSearch Search Summary |
| 01/24/2020 | Trademark Snap Shot Publication Stylesheet |
| 02/05/2020 | Notification of Notice of Publication |
| 02/05/2020 | Notice of Publication |
| 02/25/2020 | Trademark Official Gazette Publication Confirmation |
| 04/22/2020 | Change Address or Representation Form |
| 11/06/2021 | TTAB Order |

**PROSECUTION HISTORY OF SERIAL NO. 88/647,766**

**OPPOSITION NO. 91254647**

**Federal Circuit Appeal No. 2024-1212**

**Mark:**

**kist**

| DATE | DESCRIPTION |
|---|---|
| 10/09/2019 | Application |
| 10/09/2019 | Drawing |
| 01/23/2020 | XSearch Search Summary |
| 01/24/2020 | Trademark Snap Shot Publication Stylesheet |
| 02/05/2020 | Notification of Notice of Publication |
| 02/05/2020 | Notice of Publication |
| 02/25/2020 | Trademark Official Gazette Publication Confirmation |
| 04/22/2020 | Change Address or Representation Form |

# HISTORY OF OPPOSITION NO. 91254647
## Federal Circuit Appeal No. 2024-1212

| DATE | DESCRIPTION |
|---|---|
| 03/10/2020 | Notice of Opposition |
| 03/12/2020 | Order: Notice and Trial Dates Sent; Answer Due |
| 04/21/2020 | Applicant's Answer |
| 04/21/2020 | Applicant's Answer (duplicate) |
| 06/03/2020 | Applicant's Consented Motion to Suspend for Settlement |
| 06/03/2020 | Order: Motion to Suspend Granted |
| 11/18/2020 | Applicant's Consented Motion to Extend Deadlines |
| 11/18/2020 | Order: Motion to Extend Deadlines Granted |
| 02/16/2021 | Opposer's Consented Motion to Extend Deadlines |
| 02/22/2021 | Order: Motion to Extend Deadlines Granted |
| 02/23/2021 | Opposer's Motion to Extend Discovery |
| 02/27/2021 | Order: Proceedings Suspended Pending Disposition of Outstanding Motion |
| 03/15/2021 | Applicant's Opposition to Motion to Extend Discovery; Exhs. A – I |
| 03/18/2021 | Applicant's Change of Correspondence Address |
| 04/05/2021 | Opposer's Reply in Support of Motion to Extend Discovery |
| 08/03/2021 | Order: Motion to Extend Discovery Granted; Trial Dates Reset |
| 10/28/2021 | Applicant's Motion to Withdraw as Counsel |
| 11/06/2021 | Order: Motion to Withdraw Granted; Response Due; Proceedings Suspended |
| 12/03/2021 | Applicant's Notice of Appearance of Counsel |
| 12/03/2021 | Applicant's Change of Correspondence Address |
| 12/22/2021 | Order: Proceedings Resumed; Trial Dates Reset |
| 02/06/2022 | Opposer's Motion for Extension of Time |
| 03/07/2022 | Order: Motion for Extension of Time Granted |
| 04/28/2022 | Opposer's First Notice of Reliance; Exh. A |
| 05/05/2022 | Opposer's Redacted Testimony Declaration of Karen Holme; Exhs. A – V |

| DATE | DESCRIPTION |
|---|---|
| 05/05/2022 | Opposer's Confidential Testimony Declaration of Karen Holme; Exhs. A – P |
| 05/05/2022 | Opposer's Confidential Exhibits Q – Y to Testimony Declaration of Karen Holme |
| 05/06/2022 | Opposer's Second Notice of Reliance; Exh. A |
| 05/06/2022 | Opposer's Redacted Testimony Declaration of Mark Madden; Exhs. A – J |
| 05/06/2022 | Opposer's Confidential Testimony Declaration of Mark Madden; Exhs. A – J |
| 05/09/2022 | Opposer's Redacted Testimony Declaration of Derek Dabrowski |
| 05/09/2022 | Opposer's Confidential Testimony Declaration of Derek Dabrowski |
| 05/23/2022 | Applicant's Second Amended Initial Disclosures |
| 05/23/2022 | Applicant's Change of Correspondence Address |
| 07/05/2022 | Applicant's Consented Motion to Extend Deadlines |
| 07/12/2022 | Order: Consented Motion to Extend Deadlines Granted |
| 08/05/2022 | Applicant's Consented Motion to Extend Deadlines |
| 08/12/2022 | Order: Consented Motion to Extend Deadlines Granted |
| 09/06/2022 | Applicant's Confidential Testimony Declaration of Timothy Dabish; Exhs. A – K |
| 09/06/2022 | Applicant's Confidential Testimony Declaration of Randal Smith |
| 09/07/2022 | Applicant's Redacted Testimony Declaration of Timothy Dabish; Exhs. A – K |
| 09/07/2022 | Applicant's Redacted Testimony Declaration of Randal Smith |
| 09/07/2022 | Applicant's First Notice of Reliance |
| 10/18/2022 | Opposer's Third Notice of Reliance |
| 10/18/2022 | Opposer's Fourth Notice of Reliance |
| 10/19/2022 | Opposer's Redacted Testimony Declaration of Mark Madden; Exh. A |
| 10/19/2022 | Opposer's Confidential Testimony Declaration of Mark Madden; Exh. A |
| 10/19/2022 | Opposer's Fifth Notice of Reliance |
| 12/15/2022 | Opposer's Consented Motion to Extend Deadlines |
| 12/20/2022 | Order: Consented Motion to Extend Deadlines Granted |

| DATE | DESCRIPTION |
|------|-------------|
| 02/01/2023 | Opposer's Redacted Trial Brief |
| 02/01/2023 | Opposer's Confidential Trial Brief |
| 03/02/2023 | Joint Motion for Extension of Briefing Schedule |
| 03/17/2023 | Joint Motion for Extension of Briefing Schedule Granted |
| 04/03/2023 | Applicant's Trial Brief |
| 05/02/2023 | Opposer's Rebuttal Brief |
| 08/07/2023 | Opposer's Change of Correspondence Address |
| 09/30/2023 | Board Decision: Opposition Dismissed |
| 11/29/2023 | Opposer's Notice of Appeal to Federal Circuit |
| 11/29/2023 | Opposer's Notice of Appeal to Federal Circuit (duplicate) |

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Mailed: September 30, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Sunkist Growers, Inc.*

*v.*

*Intrastate Distributors, Inc.*

_____

Opposition No. 91254647

_____

Leigh Ann Lindquist of Sughrue Mion, PLLC
    for Sunkist Growers, Inc.

Michael O. Cummings of Cummings, McClorey, Davis and Acho, P.L.C.
    for Intrastate Distributors, Inc.

_____

Before Shaw, Goodman, and Elgin,
    Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

    Intrastate Distributors, Inc. ("Applicant" and IDI) seeks registration on the

Principal Register of the mark KIST (in standard characters)[1] and the stylized mark

---

[1] Application Serial No. 88647761 was filed on October 9, 2019 based on Applicant's assertion
of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15
U.S.C. § 1051(b).

,[2] both identifying "Soft drinks, namely, sodas and sparkling water; concentrates and syrups for making soft drinks" in International Class 32.

Sunkist Growers, Inc. ("Opposer") opposes registration on the ground of likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), and on the ground of dilution under Trademark Act Section 43(c), 15 U.S.C. § 1125(c). Opposer pleads ownership of multiple registrations for SUNKIST (standard character and typed drawing),[3] stylized, and word and design marks, for fresh fruits and various beverages and concentrates including the following registrations:

- SUNKIST (standard characters) for citrus-flavored, non-alcoholic, maltless beverages sold as soft drinks and concentrates for making the same in International Class 32;[4]

- SUNKIST (standard characters) for citrus flavored soft drinks and concentrates for making the same; and citrus fruit products used as ingredients in such soft drinks-namely, citrus oils in International Class 32;[5]

---

[2] Application Serial No. 88647766 was filed on October 9, 2019 based on Applicant's assertion of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). Applicant included the following description of the mark: "The mark consists of the word 'KIST' displayed in stylized font, namely, block letters." Color is not claimed as a feature of the mark.

[3] A mark depicted as a typed drawing is the legal equivalent of a standard character mark. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1909 n.2 (Fed. Cir. 2012); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 807.03(i) (July 2022).

[4] Registration No. 301281, issued February 21, 1933 (pre-Lanham Act), sixth renewal.

[5] Registration No. 578492 issued August 11, 1953 on the Principal Register, fifth renewal. The registration was amended to standard characters and includes the following statement:

- SUNKIST (standard characters) for Mineral, vitamin, or nutritionally enhanced water in International Class 5; Flavored enhanced water; Flavored waters in International Class 32;[6]

- SUNKIST (standard characters) for Fruit-flavored beverages; Lemonade in International Class 32;[7]

 for soft drinks in International Class 32;[8]

 for soft drinks in International Class 32;[9]

 for soft drinks in International Class 32;[10] and

---

"The mark consists of standard characters, without claim to any particular font, style, size, or color is inserted. The drawing is amended to appear as follows: SUNKIST."

[6] Registration No. 4042223 issued on the Principal Register October 18, 2011, first renewal.

[7] Registration No. 5123351 issued on the Principal Register January 17, 2017.

[8] Registration No. 2229120 issued on the Principal Register March 2, 1999, second renewal.

[9] Registration No. 2229121 issued on the Principal Register March 2, 1999, second renewal.

[10] Registration No. 4482629 issued on the Principal Register March 11, 2014, first renewal. The mark includes the following description: "The mark consists of the literal element 'Sunkist' over the image of a sun with rays, and a leaf dotting the 'I' in 'Sunkist'." Color is not claimed as a feature of the mark.

- **Sunkist** for "fruit juices" in International Class 32.[11]

In its answer, Applicant denies the salient allegations in the notice of opposition and asserts "affirmative defenses" in the form of amplifications of its denials.[12]

---

[11] Registration No. 2766709 issued on the Principal Register September 23, 2003, second renewal.

The additional 9 pleaded registrations for oranges and various beverages and concentrates and related goods are as follows:

- Registration No. 72087 SUNKIST (typed) issued January 5, 1909 (pre-Lanham Act), sixth renewal;

- Registration No. 301278 SUNKIST (typed) issued February 21, 1933 (pre-Lanham Act), sixth renewal;

- Registration No. 599437 SUNKIST (standard characters) issued on the Principal Register December 14, 1954, fourth renewal;

- Registration No. 1215135 SUNKIST (typed drawing) issued on the Principal Register November 2, 1982, third renewal;

- Registration No. 2766709 **Sunkist** issued on the Principal Register September 23, 2003, second renewal;

- Registration No. 5922603  issued on the Principal Register November 26, 2019;

- Registration No. 5863607 SUNKIST (standard characters) issued on the Principal Register September 17, 2019;

- Registration No. 5515551  issued on the Principal Register July 10, 2018.

- Registration No. 4467927 SUNKIST (standard characters) was pleaded in the notice of opposition but cancelled during the pendency of the proceeding so Opposer does not rely on it.

[12] Answer, 4 TTABVUE; refiled at 5 TTABVUE. Citations in this opinion to the briefs and other materials in the case docket refer to TTABVUE, the Board's online docketing system. *See New Era Cap Co. v. Pro Era, LLC*, 2020 USPQ2d 10596, at *2 n.1 (TTAB 2020).

Each party filed a trial brief and Opposer filed a reply brief.[13]

## The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files of the involved applications. In addition, the parties introduced the following testimony and evidence.

Opposer submitted a first notice of reliance on pleaded registrations (25 TTABVUE), a second notice of reliance on printed publications (29 TTABVUE), a third notice of reliance on oppositions filed, relating to policing its marks (45 TTABVUE), a fourth notice of reliance on records from the U.S. Border Control Trademark Protection database, relating to policing of its marks (46 TTABVUE), and a fifth notice of reliance on internet materials, relating to Opposer's licensing activities (49 TTABVUE).[14] Opposer submitted testimony declarations from Karen Holme, Manager of Intellectual Property at Opposer Sunkist Growers, Inc. (28 TTABVUE (confidential declaration testimony and exhibits at 26 and 27 TTABVUE)); Mark Madden, Vice President of Marketing and Global Licensing of Sunkist Growers, Inc. (31 and 47 TTABVUE (confidential testimony at 30 and 48 TTABVUE)); and Derek Dabrowski, Vice President of Marketing - Carbonated Soft

---

Applicant included amplifications of its denial of likelihood of confusion as "affirmative defenses" which are not true affirmative defenses. *Shenzhen IVPS Tech. Co. Ltd. v. Fancy Pants Prods., LLC*, 2022 USPQ2d 1035, at *3 n.5 (TTAB 2022) ("amplifications [of denials] are not true affirmative defenses").

[13] Opposer's brief is at 53 TTABVUE; its confidential brief is at 52 TTABVUE; and its reply brief is at 57 TTABVUE. Applicant's brief is at 56 TTABVUE.

[14] The website URL was provided but there was no date of access provided or listed; however, the omission is waived, since Applicant did not object.

Drinks Category at Keurig Dr. Pepper Inc. (33 TTABVUE (confidential testimony at 32 TTABVUE)).[15]

Applicant submitted a first notice of reliance on a list of registrations (42 TTABVUE).[16] Applicant submitted the testimony declarations of Tim Dabish, CEO of Intrastate Distributors, Inc. (43 TTABVUE (confidential testimony at 40 TTABVUE)); and Randal Smith, Division Sales Manager for Intrastate Distributors, Inc. (44 TTABVUE (confidential testimony at 41 TTABVUE)).

## The Parties and Background

Opposer Sunkist Growers is a 130-year old "agricultural marketing cooperative representing thousands of fruit growers," operating under the SUNKIST brand since the early 1900s and offering fresh fruit and licensing a variety of products and

---

[15] As extended, Opposer's testimony period was set to close on May 7, 2022, which was a Saturday. This testimony was filed on May 9, 2022, the next business day and is timely. Trademark Rule 2.196, 37 C.F.R. § 2.196.

[16] Applicant's testimony period closed on September 4, 2022 which was a Sunday. The next day was a federal holiday. Therefore, Applicant had until September 6, 2022 to file its testimony and evidence. Trademark Rule 2.196, 37 C.F.R. § 2.196. Applicant's first notice of reliance (42 TTABVUE) was filed on September 7, 2022 which was one day after its testimony period closed; however, because Opposer discussed the list and some of the registrations in its reply brief, we consider the KIST and KIST formative registrations stipulated into the record. Therefore, we consider it stipulated into the record that two of the KIST registrations on this list were for soda beverages (Registration Nos. 0158917 and 269794); one was for flavoring agents for food (Registration No. 0212910); that all the KIST registrations have expired (Registration No. 0158917 issued September 19, 1922 and cancelled June 21, 2003; Registration No. 0212910 issued May 18, 1926 and cancelled February 24, 2007; Registration No. 2697947 issued March 18, 2003 and cancelled October 25, 2013); and that one of the KIST registrations was not in the name of Applicant or its predecessor in interest, Leading Edge Flavors, Inc., dba Leading Edge Brands (LEB): Registration No. 0158917, Monarch Company assignee. The cancelled KIST registration on this list owned by Applicant as assignee (Registration No. 2697947) also was submitted into the record by way of witness testimony as a TSDR printout; the change in ownership by assignment to Applicant is not reflected on the printout. Dabish Declaration, exhibit C, 43 TTABVUE. Generally, cancelled registrations are evidence only that the registrations issued.

services under the SUNKIST mark. Holme declaration, paragraphs 3 and 4, 28 TTABVUE; Madden declaration, paragraph 2, 31 TTABVUE. For at least 90 years, Opposer has offered SUNKIST branded beverages directly to consumers or through various licensees. Holme declaration, 28 TTABVUE, paragraph 18.

SUNKIST-branded beverages are an extremely important part of Opposer's licensing program and business in the United States. Holme declaration, paragraph 7, 28 TTABVUE; Madden declaration, paragraph 2, 31 TTABVUE.[17] Opposer's two biggest beverage licensees in the United States are Keurig Dr. Pepper (soft drinks) and Nestle Professional (beverages delivered via beverage dispensers). Madden declaration, paragraphs 7, 8, 31 TTABVUE. Sunkist also has license agreements with Jel Seit to sell SUNKIST branded drink mixes, liquid water enhancers, and freezable novelties and Lyons Magnus for use with not-from-concentrate orange juice. Madden declaration, paragraphs 9, 10, 31 TTABVUE.

Applicant Intrastate Distributors, Inc. is a bottling company of company-owned brands, private label products, and some regional brands. Dabish declaration, paragraph 3, 43 TTABVUE. IDI's company-owned brands include KIST, FROSTIE, and TOWNE CLUB. Dabish declaration, paragraph 3, 43 TTABVUE. IDI purchased the KIST brand from its prior owner LEB, which continuously used the KIST brand from at least 2000 to the 2009 purchase date. Dabish declaration, paragraph 4, exhibit C, 43 TTABVUE; Smith declaration, paragraphs 3-4, 44 TTABVUE. LEB used KIST in connection with canned soda products and owned a trademark for KIST that

---

[17] Much of the information (e.g., advertising and sales) has been provided confidentially, so we reference it in general terms.

issued in 2003 (Registration No. 2697947 listing a 1953 first use in commerce date and referencing the two prior KIST registrations from Applicant's list of registrations (Registration No. 0158917, issued September 19, 1922, and cancelled June 21, 2003) and Registration No. 0212910 (issued May 18, 1926, and cancelled February 24, 2007) *see supra* n.16.[18] Dabish declaration paragraphs 4, and 7, exhibit C, 43 TTABVUE. The registration was transferred and assigned[19] with the sale to Applicant, but this KIST registration inadvertently cancelled in 2013. Dabish declaration paragraphs 4, and 7, 43 TTABVUE.

After acquiring the mark, Applicant used the KIST mark with canned soda products, although Applicant now (and since 2014) uses the KIST brand on two glass-bottled nostalgia soda products as well as sparkling water products. Dabish declaration paragraph 8, 43 TTABVUE. In the past, there existed a trademark registration for KIST for soda beverages (owned by Monarch Company (and identified by the witness as Monarch Beverage Company)) that has since expired. Applicant's notice of reliance, 42 TTABVUE and n.16.

Applicant's witness Mr. Dabish testified about his awareness of KIST soda beverages in the twentieth century and provided a composite exhibit which included photos of various packaged uses of KIST with soda: glass soda bottles, canned soda, and plastic soda bottles. Dabish declaration, paragraph 6 and Exhibit G, 43 TTABVUE. The KIST glass-bottled nostalgia soda is marketed with a number of

---

[18] The asserted 1953 date is not evidence of first use. Trademark Rule 2.122(b)(2), 37 C.F.R. § 2.122(b)(2).
[19] As indicated in n.16, the TSDR printout (provided as exhibit C) shows that Office records still reflect ownership in the name of LEB at the time of the 2013 cancellation.

different "nostalgia" glass-bottled sodas; the photographic exhibit provided by Applicant's witness shows glass-bottled KIST soda being sold with other "Great American Soda Classics," in a variety pack (e.g., Dad's Root Beer, Moxie, Frostie, Faygo among others). Dabish declaration, Exhibit G, 43 TTABVUE.

## Entitlement to a Statutory Cause of Action

In every inter partes case, the plaintiff must establish its statutory entitlement to bring an opposition or cancellation proceeding. To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute and (ii) proximate causation. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir. 2020). Demonstrating a real interest in opposing registration of a mark satisfies the zone-of-interests requirement, and demonstrating a reasonable belief in damage by the registration of a mark demonstrates damage proximately caused by registration of the mark. *Id.* at *7-8.

Opposer has properly made its pleaded registrations of record by submitting copies from the TSDR electronic database, under notice of reliance, and accompanying TSDR copies with its notice of opposition.[20] Trademark Rule 2.122(d)(1)-(2), 37 C.F.R. §§ 2.122(d)(1)-(2).

The pleaded registrations establish Opposer's direct commercial interest and real interest in the proceeding and its reasonable belief in likely damage, establishing its

---

[20] Opposer's first notice of reliance 25 TTABVUE; Notice of Opposition, 1 TTABVUE.

entitlement to oppose registration of Applicant's trademarks.[21] *See Herbko Int'l v. Kappa Books*, 308 F.3d 1156, 64 USPQ2d 1375, 1377 (Fed. Cir. 2002) ("In most settings, a direct commercial interest satisfies the 'real interest' test"); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (pleaded registrations "suffice to establish … direct commercial interest"; a belief in likely damage can be shown by establishing a direct commercial interest); *Monster Energy Co. v. Lo*, 2023 USPQ2d 87, at *11 (TTAB 2023) (valid and subsisting pleaded registration made of record establishes entitlement to oppose); *Shenzhen IVPS Tech. Co.*, 2022 USPQ2d 1035, at *13-14 (valid and subsisting pleaded registration establishes opposer's direct commercial interest in the proceeding and its belief in damage in connection with likelihood of confusion claim) (citation omitted).

## Priority

Because Opposer's pleaded registrations are of record and Applicant has not brought a counterclaim to cancel them, priority is not an issue with respect to the goods identified in the registrations.[22] *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).

## Likelihood of Confusion

Our determination under Trademark Act Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177

---

[21] Applicant did not address Opposer's entitlement in its brief.
[22] Applicant did not address Opposer's priority in its brief.

USPQ 563, 567 (CCPA 1973) (setting forth factors to be considered, referred to as "*DuPont* factors").

In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). We discuss the *DuPont* factors for which there is relevant argument and evidence. *See In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1162-63 (Fed. Cir. 2019) (the Board considers each *DuPont* factor for which there is evidence and argument); *see also Herbko Int'l,* 64 USPQ2d at 1380 ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods.'").

We focus our analysis on Registration No. 578492 for the mark SUNKIST (standard characters) for citrus flavored soft drinks and concentrates for making the same; and citrus fruit products used as ingredients in such soft drinks-namely, citrus oils. A finding of no likelihood of confusion between Applicant's KIST marks and the standard character SUNKIST mark means we also would not find likelihood of confusion as to the other pleaded SUNKIST registrations that either are typed or standard character, stylized, or contain words and a design. *See In re Allegiance Staffing*, 115 USPQ2d 1319, 1325 (TTAB 2015) ("[I]f there is no likelihood of confusion between Applicant's mark and ALLEGIS in standard characters, then

there would be no likelihood of confusion with the other ALLEGIS marks."); *In re Max Capital Grp. Ltd.*, 93 USPQ2d 1243, 1245 (TTAB 2010). Therefore, in this decision, we refer to SUNKIST (Registration No. 578492) as the pleaded mark.

## A. Similarity or Dissimilarity of the Goods

Under the second *DuPont* factor we consider the "similarity or dissimilarity and nature of the goods or services as described in an application or registration." *Dupont* 177 USPQ at 567. We evaluate the relatedness of the goods based on their identifications in the subject application and the pleaded registration. *Stone Lion Cap. Partners, LP v. Lion Cap. LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014). It is sufficient if likelihood of confusion is found with respect to use of the mark on any item that comes within the description of goods in the application or registration. *Tuxedo Monopoly, Inc. v. General Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981).

Applicant's goods are "Soft drinks, namely, sodas and sparkling water; concentrates and syrups for making soft drinks" and Opposer's goods in the pleaded mark are "citrus flavored soft drinks and concentrates for making the same; and citrus fruit products used as ingredients in such soft drinks-namely, citrus oils." Applicant's soda soft drink goods and concentrates for making soft drinks necessarily encompass Opposer's more narrowly defined citrus flavored soft drinks and concentrates for making citrus flavored soft drinks. *See In re Hughes Furniture Indus., Inc.*, 114 USPQ2d 1134, 1137 (TTAB 2015) ("Applicant's broadly worded identification of 'furniture' necessarily encompasses Registrant's narrowly identified

'residential and commercial furniture.'"). We find the goods are legally identical in part.[23]

The second *DuPont* factor weighs in favor of likelihood of confusion.

## B. Similarity or Dissimilarity of Trade Channels

Under the third *DuPont* factor, we consider the "similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 177 USPQ at 567. We base our consideration of the channels of trade on the basis of the goods recited in the application and pleaded mark. *Octocom Sys. Inc. v. Houston Comps. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application, regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which sales of the goods are directed.").

Because the goods in Applicant's applications and Opposer's pleaded mark are legally identical in part, we presume that these identical goods will move in the same trade channels to the same classes of purchasers.[24] *See In re Viterra Inc.*, 101 USPQ2d at 1908; *In re Medline Indus., Inc.*, 2020 USPQ2d 10237 at *4 (TTAB 2020). In addition, witness testimony confirms that both parties sell their soda goods in supermarkets and grocery stores, evidencing overlap of trade channels.

The third *DuPont* factor weighs in favor of likelihood of confusion.

---

[23] Applicant has not addressed this *DuPont* factor in its brief.
[24] Applicant has not addressed this *DuPont* factor in its brief.

### C. Conditions of Sale

The fourth *DuPont* factor considers the "conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 177 USPQ at 567. We must make our determination based on the least sophisticated consumer. *Stone Lion*, 110 USPQ2d at 1163-64 (affirming that TTAB properly considered all potential investors for recited services, which included sophisticated investors, but that precedent requires consumer care for likelihood of confusion decision to be based "on the least sophisticated potential purchasers").

The purchasers of Applicant's and Opposer's goods are general consumers. The soft drinks identified in the applications and in the pleaded mark can be inexpensive goods which could be purchased on impulse or without a great deal of care by ordinary consumers. As a general proposition, inexpensive goods may be purchased with less care, which increases the likelihood of confusion. *Recot Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000) ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care") (citations omitted). We find that the purchase of soft drinks is done with nothing more than ordinary care and is subject to impulse purchase.[25]

The fourth *DuPont* factor weighs in favor of a finding of likelihood of confusion.

---

[25] Applicant has not addressed this *DuPont* factor in its brief.

### D. Strength of Opposer's mark

In determining the strength of a mark, we consider both its conceptual strength, based on the nature of the mark itself, and its commercial strength, based on the marketplace recognition value of the mark. *See In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010) ("A mark's strength is measured both by its conceptual strength (distinctiveness) and its marketplace strength …."); *Top Tobacco, L.P. v. North Atl. Operating Co., Inc.*, 101 USPQ2d 1163, 1171-72 (TTAB 2011) (the strength of a mark is determined by assessing its inherent strength and its commercial strength). Market strength is the extent to which the relevant public recognizes a mark as denoting a single source. *Tea Bd. of India v. Republic of Tea Inc.*, 80 USPQ2d 1881, 1899 (TTAB 2006). In tandem, if there is evidence in the record, we consider whether the mark has commercial weakness in the marketplace.[26] *DuPont*, 177 USPQ at 567.

Because SUNKIST is registered on the Principal Register without a claim of acquired distinctiveness, we presume that the mark as a whole is inherently distinctive. Trademark Act Section 7(b), 15 U.S.C. § 1057(b). Nonetheless, we may consider whether an inherently distinctive mark is "weak as a source indicator" in the course of a *DuPont* analysis. *See In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1517-18 (TTAB 2016).

To determine the conceptual strength of Opposer's mark, we evaluate its intrinsic nature, that is, where it lies "along the generic-descriptive-suggestive-arbitrary (or

---

[26] Opposer points out that there is no evidence of third-party use of SUNKIST in the record. 53 TTABVUE 25.

fanciful) continuum of words." *In re Davia*, 110 USPQ2d 1810, 1814 (TTAB 2014); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1068 (2000) ("[W]ord marks that are [arbitrary, fanciful, or suggestive] are held to be inherently distinctive.").

Opposer argues that SUNKIST is not in the dictionary and has no recognized meaning. Opposer's brief, 53 TTABVUE 25. However, Opposer also argues the connotation of SUNKIST (under *DuPont* factor one) is suggestive, stating that "SUNKIST suggests that the fresh fruit offered under the mark is kissed by the sun or sun kissed." Opposer's brief, 53 TTABVUE 25. We take this statement as an admission that SUNKIST could be perceived as the phonetic equivalent of "sun-kissed." *See e.g., Robinson v. Hot Grabba Leaf, LLC*, 2019 USPQ2d 149089, at *8 (TTAB 2019) (statements in brief considered "admissions that the term 'grabba' is currently viewed by the relevant public as, at a minimum, immediately conveying information about an ingredient or characteristic of tobacco, or tobacco products, including cigar wraps") *cancellation order vacated on default judgment*, No. 0:19-cv-61614-DPG (S.D. Fla. Dec. 17, 2019).

Because we may consider dictionary definitions in connection with determining the conceptual strength of a mark, we take judicial notice of the dictionary definition of "sun kissed" which is defined as ": having plenty of bright sunlight :sunny."[27] *See*

---

[27] The Board may take judicial notice of dictionary definitions, including definitions in online dictionaries which exist in printed format or that have regular fixed editions. *In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 n.23 (TTAB 2013). Merriam-Webster Dictionary, merriam-webster.com (accessed September 26, 2023).

*In re FabFitFun, Inc.*, 127 USPQ2d 1670, 1673 (TTAB 2018) (considering dictionary definition of "smoking hot" in relation to identified goods, cosmetics, for purposes of determining conceptual strength of the mark and finding the term highly suggestive as it indicates the purpose or intended result of the goods); *In re Azteca Rest. Enters. Inc.*, 50 USPQ2d 1209, 1212 (TTAB 1999) (suggestiveness of Azteca established by dictionary definition and further confirmed by third-party registrations); *see also Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 97 USPQ 330, 332 (CCPA 1953) (dictionary definitions considered "to determine the ordinary significance and meanings of words."). *Cf. Shenzhen IVPS Tech. Co.*, 2022 USPQ2d 1035 at *25 (considering dictionary definition of "smoke" in connection with phonetic equivalent term SMOK to determine whether "the SMOK family feature in Opposer's alleged family of marks is distinctive, highly suggestive, or descriptive").

We find that SUNKIST, which Opposer indicates is phonetically equivalent to "sun-kissed," has a somewhat suggestive meaning, as it suggests the sunny growing conditions in California for Opposer's citrus fruit. This suggestion is confirmed by historical advertising and recent digital advertising provided by Opposer which touts the California sunshine under which Opposer's citrus fruits are grown.[28] *See*

---

[28] Text from current and historical advertising includes the following:

- "California sunshine" makes the "famous Sunkist oranges lemons and grapefruit so especially refreshing and healthful";
- "sunny citrus groves";
- "cheers to more sunshine at happy hour" (featuring tangelo juice);
- "sunnylicious days are here … with Cali the Sunkist California Mandarin";
- "Six months of California sunshine burst free when you open a Sunkist orange";
- "Sunkist has a decidedly different flavor – lively, sunny with a tree-ripened taste. This difference is simply the difference between California oranges and fruit from other

*Citigroup Inc. v. Cap. City Bank Grp.*, 94 USPQ2d 1645, 1668 (TTAB 2010) ("CITIBANK, although inherently distinctive, is suggestive"), *aff'd*, 637 F.3d 1344 (Fed. Cir. 2011).

Turning to commercial strength, Opposer argues that its SUNKIST mark is famous.[29] Commercial strength of a mark may be measured indirectly by the volume of sales and advertising expenditures in connection with the goods or services sold under the mark, and other factors such as length of time of use of the mark; widespread critical assessments; notice by independent sources of the goods or services identified by the marks; and the general reputation of the goods or services. *Bose Corp. v. QSC Audio Prods. Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, 1308 (Fed. Cir. 2002) (recognizing indirect evidence as appropriate proof of strength); *Weider Publ'ns, LLC v. D & D Beauty Care Co.*, 109 USPQ2d 1347, 1354 (TTAB 2014). A mark's renown may "var[y] along a spectrum from very strong to very weak." *Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 122 USPQ2d 1733, 1734 (Fed. Cir. 2017) (internal quotations omitted).

---

parts of the country. Warm sunshine, cool nights and mountain water put a sharper flavor, a deeper richer color in California ...."

- "Sunkist Oranges are the finest of the crop of California, where sunshine, mineral rich soil, cool nights combine to produce oranges of the highest quality."

Holme declaration exhibits, 26 and 27 TTABVUE; Madden declaration exhibits, 31 TTABVUE 46, 57, 76.

The success of this marketing has been tested by the Nestle Professional survey, filed confidentially and referenced by Opposer's witness. Holme declaration, 27 TTABVUE.

[29] Applicant has not addressed Opposer's arguments as to fame in its brief, but it is Opposer's burden to prove fame. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1367 (Fed. Cir. 2012) (holding that it is the opposer's burden to prove fame of its mark).

SUNKIST branded beverage products "include, but are not limited to, carbonated soft drinks (CSD's), 100% juice, juice drinks, flavored water and tea." Madden declaration, paragraph 6, 31 TTABVUE. Through licensing, the SUNKIST mark has been continuously used in connection with carbonated beverages since 1977. Holme declaration, paragraphs 8-9, 28 TTABVUE. Opposer's carbonated soft drinks are widely available (the percentage of market exposure is confidential), with the current licensee, Keurig Dr. Pepper, selling "SUNKIST brand soft drinks throughout the United States, in grocery stores, supermarkets, drugstores, convenience stores, Dollar stores, and the like." Dabrowski declaration, paragraph 11, 33 TTABVUE; Madden declaration, paragraph 6, 31 TTABVUE. Keurig Dr. Pepper has "pouring rights at different venues" such as the American Airlines Center, Dallas-Ft. Worth. Dabrowski declaration, paragraph 15, 33 TTABVUE. "In March 2021, SUNKIST branded carbonated soft drinks became the number one fruit flavor carbonated soft drink brand in the United States" "in terms of bottle/can volume in the marketplace"; it is "the number one [selling] orange [carbonated soft drink] and the number one diet orange (now known as "Zero") carbonated soft drink" in the United States as of 2021 based on industry reports to which Opposer subscribes. Madden declaration, paragraph 24, 31 TTABVUE; Dabrowski declaration, paragraph 8, 33 TTABVUE. Sunkist also is "the number one carbonated soft drink dollar growth brand in the US over the past two years." Madden declaration, paragraph 24, 31 TTABVUE; Dabrowski declaration, paragraph 8, 33 TTABVUE. Keurig Dr. Pepper confidentially provided its annual sales revenue for the carbonated beverages, from 2017 through

2021, and its soft drink case sales from 2007 to 2021, which by any standard, are substantial. Dabrowski declaration, paragraph 22, 33 TTABVUE.

Mr. Dabrowski indicated that most marketing for the carbonated beverage is developed and provided in-house, and he provided dollar figures that grouped Keurig Dr. Pepper's marketing and promotional expenditures for the SUNKIST brand with other expenditures (innovation, trade support, distribution). Dabrowski declaration, paragraphs 12, and 21, 33 TTABVUE. Therefore, we do not have separate figures for marketing or advertising of the carbonated soda beverages. Opposer's licensee Keurig Dr. Pepper utilizes "all types of media," which includes but is "not limited to social media, television, paid sponsorships, radio and digital advertisements, [and] sports sponsorships with major college conferences." Dabrowski declaration, paragraph 13, 33 TTABVUE; Madden declaration, paragraph 13, 31 TTABVUE. However, this testimony is lacking in specifics as to frequency, and audience reach; much of the testimony in the record relates to promotional activities that are not recent (e.g., past television series placements, the Fiesta Bowl, and Myspace concert series). Dabrowski declaration, paragraphs 17 and 18, 33 TTABVUE; Madden declaration paragraphs 15-16, 31 TTABVUE.

Opposer relies on industry data relating to brand awareness (which is high and provided confidentially), and also relies on confidential third-party IRI data to which it subscribes to learn how often its carbonated soda product is found in United States consumers' homes on a rolling 18-month basis. Dabrowski declaration, paragraphs 19 and 20, 33 TTABVUE. There is no evidence of media mentions in the record.

Also in connection with strength, Opposer provided evidence by notices of reliance that it polices its marks by the filing of oppositions with the Trademark Trial and Appeal Board and by recording its federal trademark registrations with U.S. Customs. Opposer's third notice of reliance, 45 TTABVUE; Opposer's fourth notice of reliance, 46 TTABVUE. Opposer also provided its listings/rankings for Opposer in the License Global publication as one of the top licensed global brands; the articles provided state on their face that License Global annually tracks "retail sales of licensed merchandise from the world's leading brands across every segment of consumer products." Holme declaration, paragraph 20, 28 TTABVUE. Because this is an industry publication, it is not clear that the general consumer is aware of this publication or its rankings.

The record is devoid of third-party uses or registrations of the same or similar sun-kissed formative marks in the industry.

Overall, despite some deficiencies in the testimony and evidence, we find based on this record that Opposer's mark is commercially strong for carbonated soda drinks, specifically, citrus flavored soda, and has a high degree of public recognition and renown.[30]

The fifth *DuPont* factor weighs in favor of likelihood of confusion.

---

[30] Because Section 2(d) fame is a matter of degree along a continuum, we need not determine whether Opposer has established the highest degree of renown for its mark (as we would for a claim of dilution under Section 43(c)).

### E. Similarity or Dissimilarity of the Marks

Under the first *DuPont* factor, we examine the similarities and dissimilarities of the parties' marks in their entireties as to appearance, sound, meaning, and commercial impression. *See In re Viterra Inc.*, 101 USPQ2d at 1908 (quoting *DuPont*, 177 USPQ at 567).

"The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs.,* 101 USPQ2d at 1721 (citation omitted). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Inter IKEA Sys. B.V. v. Akea, LLC,* 110 USPQ2d 1734, 1740 (TTAB 2014); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108 (TTAB 1975).

Our analysis cannot be predicated on dissecting the marks into their various components; the decision must be based on the entire marks, not just part of the marks. *In re Nat'l Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also Franklin Mint Corp. v. Master Mfg. Co.,* 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion.").

Applicant's marks are KIST (standard characters) and KIST (stylized). Opposer's pleaded mark is SUNKIST, also in standard characters. Applicant's and Opposer's standard character marks are not limited to any particular font style, size, or color

and could be displayed in the same manner. Trademark Rule 2.52(a), 37 C.F.R. § 2.52(a). Opposer's standard character pleaded mark also could be displayed in the same stylization as Applicant's stylized KIST mark.

The marks are similar in appearance and sound to the extent they both contain the term KIST. Although there is no correct pronunciation of a trademark, *In re Viterra Inc.*, 101 USPQ2d at 1912, both Opposer and Applicant are in agreement that KIST, the entirety of Applicant's mark and the suffix portion of Opposer's SUNKIST mark, can be pronounced phonetically as "kissed," which makes Applicant's mark similar in sound to the KIST suffix portion of Opposer's pleaded mark. The marks are dissimilar in appearance and sound to the extent that Opposer's pleaded mark contains the additional lead word SUN.

As to connotation, Opposer states that SUNKIST connotes the phonetic equivalent of "sun-kissed" which we have judicially noticed as having a specific dictionary meaning of sunny or intense sunshine. KIST in Applicant's mark could be considered arbitrary or, as both parties agree, the phonetic equivalent of KISSED. We take judicial notice that "kissed" is defined as ": to touch (someone or something) with the lips especially as a mark of affection or greeting."[31]

Opposer argues that both marks connote a "kiss." Opposer's reply brief, 57 TTABVUE 10. Applicant disagrees. Applicant submits that "the vast majority of Opposer's marketing over the decades has focused specifically on citrus fruit and has contained orange colors and sun images, cementing the association of SUN into its

---

[31] Merriam-Webster Dictionary, merriam-webster.com (accessed September 26, 2023).

marks" and submits that the word SUN dominates Opposer's marks. Applicant's brief, 56 TTABVUE 9. Applicant also argues that "Opposer's own description of the connotations of SUNKIST and KIST admits that their connotations are significantly different. While both have some notion of being kissed, SUNKIST refers to "kissed by the sun" and thus connotes a natural phenomenon. … In contrast, "KIST" connotes being kissed by another person, in a romantic or erotic context." Applicant's brief, 56 TTABVUE 9.

In connection with connotation and commercial impression, we can consider the parties' trade dress. *See Burns Philp Food, Inc. v. Modern Prods., Inc.*, 1 F.3d 1252, 28 USPQ2d 1687, 1690 (Fed. Cir. 1993) ("[T]rade dress can be used as evidence of whether a word mark projects *a confusingly similar or different* meaning or impression."), quoting J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20.04 [1], at 20-28 (3d ed. 1992) (emphasis added in decision). Applicant markets KIST to reference a kiss:



Dabish declaration, exhibit F, 43 TTABVUE.

Opposer markets SUNKIST to reference the sun:








Holme declaration, 28 TTABVUE, and 26 TTABVUE, confidential exhibit E. [32]

Some of the pleaded registrations listed above include the sun design as shown in

Opposer's labels, packaging, and marketing, which Opposer describes as "an image

---

[32] Although the exhibits to the Holme declaration were designated as confidential, clearly the advertisements and packaging, which are shown publicly to the consumer, are not, and we have not treated them as such. Trademark Rule 2.116(g), 37 C.F.R § 2.116(g) ("The Board may treat as not confidential that material which cannot reasonably be considered confidential, notwithstanding a designation as such by a party.").

of a sun with rays." (*see e.g.*, Registration No. 4482629, n.10). We find that SUNKIST and KIST are dissimilar in connotation and commercial impression.

Although there are some clear similarities in the marks, we find that the dissimilarities in connotation and commercial impression weigh heavily against confusion. *See e. g, Citigroup*, 94 USPQ2d at 1664 (although the marks were "superficially similar" to the extent both marks contained the term "City Bank/Citibank," CITIBANK has a different commercial impression from CAPITAL CITY BANK "because applicant's marks start with the word 'Capital,' the commercial impression engendered by applicant's marks is entirely different. Applicant's marks will be perceived as CAPITAL CITY ... bank, not as CAPITAL ... CITY BANK"). *Cf. Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1283 (Fed. Cir. 1984) ("It is the similarity of commercial impression between SPICE VALLEY and SPICE ISLANDS that weighs heavily against the applicant"); *Proctor & Gamble Co. v. Conway,* 419 F.2d 1332, 164 USPQ 301, 304 (CCPA 1970) ("A designation may well be likely to cause purchaser confusion as to the origin of goods because it conveys, as used, the same idea, or stimulates the same mental reaction, or in the ultimate has the same meaning.").

Because the commercial impression engendered by KIST is significantly different from the commercial impression created by SUNKIST, and the appearance, sound

and connotation are only superficially similar, the first *DuPont* factor weighs against likelihood of confusion.

### F. Actual Confusion

Under the seventh and eighth *DuPont* factors, we consider the nature and extent of any actual confusion in light of the length of time and conditions under which there has been contemporaneous use of Opposer's and Applicant's marks. *DuPont*, 177 USPQ at 567. The seventh and eighth *DuPont* factors are interrelated; the absence of evidence of actual confusion, under the seventh *DuPont* factor, by itself is entitled to little weight in our likelihood of confusion analysis unless there also is evidence, under the eighth *DuPont* factor, that there has been a significant opportunity for actual confusion to have occurred. *See Barbara's Bakery Inc. v. Landesman*, 82 USPQ2d 1283, 1287 (TTAB 2007) (the probative value of the absence of actual confusion depends upon there being a significant or reasonable opportunity for actual confusion to have occurred); *In re Cont'l Graphics Corp.*, 52 USPQ2d 1374, 1377 (TTAB 1999); *Gillette Can. Inc. v. Ranir Corp.*, 23 USPQ2d 1768, 1774 (TTAB 1992). Thus, if there has been appreciable and continuous use by an applicant of its mark for a significant period of time in the same markets as those served by an opposer, absence of any reported instances of confusion is probative. *Citigroup*, 94 USPQ2d at 1660. We "look at actual market conditions, to the extent there is evidence of such conditions of record," under the eighth *DuPont* factor. *See In re Guild Mtg. Co.*, 2020 USPQ2d 10279, at *6 (TTAB 2020).

Applicant argues there is no actual confusion under the seventh *DuPont* factor, Applicant's brief, 56 TTABVUE 10, while Opposer argues that the seventh and eighth

*DuPont* factors are neutral because Applicant's applications are intent-to-use. Opposer's brief, 53 TTABVUE 30. Although Applicant filed its applications as intent-to-use, Applicant's testimony indicates that the KIST marks have been and are in use in connection with soda beverages and sparkling water. Dabish declaration paragraphs 8, 9, 10, 11, 12, 43 TTABVUE.

The record indicates that KIST has been used in connection with carbonated soda beverages at least as early as 2000 by Applicant's predecessor in interest LEB. According to Applicant's witness Randal Smith, a former employee of LEB,[33] LEB purchased the rights to the KIST mark from Monarch Beverage Company in 1998. Smith declaration, paragraph 3, 44 TTABVUE. Mr. Smith indicates that while working at LEB, KIST canned soda was sold in the Southeast, including the states of North and South Carolina, Georgia and Alabama; KIST canned soda was also sold in the states of Texas, Oklahoma, Nebraska, Indiana, as well as other Midwestern states. *Id.* paragraph 4. Since Applicant's purchase of the KIST brand, KIST has been in continuous use. Dabish Declaration, paragraphs 4, 5, 43 TTABVUE. Applicant distributed the KIST brand soda, in cans, in the south, with expanded sales of the KIST canned soda products into Ohio, Michigan, and Illinois. *Id.* paragraph 7. Applicant discontinued canned soda KIST sales in 2014, switching to glass-bottled soda; it now sells two "nostalgia" KIST soda products in glass bottles throughout the United States. *Id.* paragraphs 8, 10. Also since 2014, Applicant promotes sparkling water products under the KIST brand; these goods are sold in the states of Wisconsin,

---

[33] As noted above, LEB was the prior owner, transferor and assignor of the now cancelled KIST mark, Registration No. 2697947, which issued in 2003 and cancelled in 2013.

Iowa, Minnesota, Illinois, Michigan, Ohio, Pennsylvania, Virginia, North Carolina, South Carolina, Georgia, Florida, Missouri, and Indiana. *Id.* paragraph 9. Presently, one of Applicant's distributors, KeHE, distributes KIST products to Publix supermarkets in the Southeast. *Id.* paragraph 11. Applicant also distributes its KIST products directly to retail outlets such as Kroger, Menards, and Walmart. *Id.* paragraph 12.

Opposer indicates that, according to third-party IRI data, its goods, including carbonated soda drinks, are sold in 85% of grocery stores (not including small grocery stores or Costco) throughout the United States. Madden declaration paragraph 6, 31 TTABVUE; Dabrowski declaration, paragraph 11, 33 TTABVUE (goods are sold to grocery stores). In its brief, Opposer argues that the parties' trade channels overlap, referencing Applicant's testimony that it sells its goods to Publix, Kroger, Menards and Walmart, and also referencing Opposer's witnesses' testimony that Opposer's beverages and sodas are sold at convenience stores, grocery stores, big box stores, and drug stores, among others. Opposer's brief, 53 TTABVUE 24.

Opposer disputes any significant co-existence, arguing that based on the evidence in the record, Applicant's sales are small or declining. Opposer's brief 53 TTABVUE 30; Opposer's reply brief, 57 TTABVUE 6, 10. Opposer submits that the record does not support that "consumers are aware of KIST marks." Opposer's reply brief, 57 TTABVUE 6, 10.

However, we find that Applicant's sales of the products, although more regional, were and are in overlapping geographic markets with Opposer's products, offered in

the same retail stores, and have co-existed in those same geographic markets for a significant period of time. We find that Applicant's sales are not so de minimis that the lack of actual confusion is insignificant. *See Citigroup*, 94 USPQ2d at 1662 (finding no actual confusion significant based on applicant's use of the mark since the late 1970s at 69 bank branches in Florida, Georgia and Alabama); *In re Ass'n of the U.S. Army*, 85 USPQ2d 1264, 1273 (TTAB 2007) (concurrent use of the marks in the same geographic area for a significant period may "suffice[ ] to establish, under the eighth *du Pont* factor, that the absence of evidence under the seventh *du Pont* factor is legally significant and entitled to some weight.").

Based on this evidence, we find that there has been a reasonable opportunity for confusion to have occurred as the parties sell their carbonated sodas in the same geographic areas and by the same retailers since 2000. Therefore, under the seventh and eight *DuPont* factors, the lack of any reported instances of confusion weighs against a finding of likelihood of confusion.

## G. Balancing the Factors

We find the similarity of the goods, the channels of trade, conditions of sale, and strength of the mark weigh in favor of a finding of likelihood of confusion, while the similarity of the marks and the lack of actual confusion weighs against likelihood of confusion.

In any likelihood of confusion case, any of the factors may play a dominant role, *DuPont*, 177 USPQ at 567. We conclude, that despite the legal identity in part of the parties' goods, their identical trade channels, the conditions of sale, and the commercial strength or fame of Opposer's SUNKIST mark, the differences in

commercial impression of the marks and the lack of actual confusion over a long period outweigh these factors. We find that Applicant's KIST marks are not likely to cause confusion with Opposer's SUNKIST marks for legally identical in part goods.

## Dilution

In addition to its Section 2(d) claim, Opposer has asserted a dilution claim under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

Fame for dilution requires a more stringent showing than likelihood of confusion fame. *Palm Bay Imps. Inc. v. Veuve Clicquot*, 396 F.3d 1369, 73 USPQ2d 1689, 1694 (Fed. Cir. 2005); *Toro Co. v. ToroHead Inc.*, 61 USPQ2d 1164, 1170 (TTAB 2001). Dilution fame "is an either/or proposition—fame either does or does not exist—". *Coach Servs.*, 101 USPQ2d at 1724 (quoting *Palm Bay Imps.*, 73 USPQ2d at 1694). Opposer must show dilution by a preponderance of the evidence. *Chanel, Inc. v. Makarczyk*, 110 USPQ2d 2013, 2017 (TTAB 2014).

"It is well-established that dilution fame is difficult to prove." *Coach Servs.*, 101 USPQ2d at 1724. The "threshold question in a federal dilution claim is whether the plaintiff's mark is 'famous." *N.Y. Yankees P'ship v. IET Prods. and Servs., Inc.*, 114 USPQ2d 1497, 1502 (TTAB 2015). Also, in contrast to likelihood of confusion fame, dilution fame is not determined in the context of a certain field of goods or services; rather, the party asserting dilution fame of its mark "must show that, when the general public encounters the mark 'in almost any context, it associates the term, at least initially, with the mark's owner." *Coach Servs.*, 101 USPQ2d at 1725. In other words, a famous mark is one that has become a "household name." *Id.*

Opposer alleges in its pleading that its marks became famous before the filing date of Applicant's intent to use application "or any other date on which it can rely" but only argues in its brief that its mark was famous long before the 2019 application filing dates. Opposer's brief, 53 TTABVUE 31. We find that, because the record shows that Applicant's predecessor in interest began using KIST at least by 2000, Opposer must prove fame before that date, and not the filing date of the intent to use applications.[34] *Citigroup*, 94 USPQ2d at 1649-50; *ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1250 (TTAB 2015) ("[A]n element of the dilution claim is the acquisition of fame prior to the defendant's first use or application filing date").

We find that Opposer cannot not succeed on its dilution claim because the testimony in the record only addresses sales and marketing expenditures for fresh fruit from 2013 to 2021 (confidential) and for carbonated soda from 2007 to 2021 (confidential). Although Opposer's witness provided annual reports for 1947, 1951 and 1953 which discuss sales and shipments, and advertising efforts with no dollar amounts provided, aside from the age, this information is hearsay because the witness did not testify about them or use them for this purpose.[35] Holme declaration, 28 TTABVUE.

---

[34] We find this defense to the dilution claim was tried by implied consent in view of Applicant's testimony about its long use prior to the filing date of its intent to use applications.

[35] In any event, no context is provided for these raw statistics so as to allow the Board to compare Opposer's performance with that of similar businesses to determine fame and, this information would not prove dilution at the time of Applicant's predecessor in interest's use in 2000 because dilution fame is something that can be lost. *See TiVo Brands, LLC v. Tivoli, LLC*, 129 USPQ2d 1097, 1113 (TTAB 2018).

We find that Opposer cannot prevail as a matter of law on its claim of dilution because it has not proven that its SUNKIST mark became famous prior to Applicant's (predecessor in interest's) first use of the KIST mark. *Citigroup Inc.*, 94 USPQ2d at 1666 ("[B]ecause opposer did not prove that its CITIBANK marks became famous prior to applicant's first use of its mark, opposer's dilution claim fails.").

Additionally, even if we were to find that Opposer has established that its SUNKIST mark became famous before Applicant's predecessor in interest's first use of KIST in 2000, the evidence in the record is not sufficient to support the threshold question of dilution fame. The Trademark Dilution Revision Act (TDRA) lists four non-exclusive factors for courts to consider when determining whether a mark is famous:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

Opposer's SUNKIST mark (either words (typed, standard character or stylized) or words and design) is the subject of 75 registrations on the Principal Register without a showing of acquired distinctiveness. Holme declaration, paragraph 6, 28 TTABVUE. Opposer has used the SUNKIST mark since 1907 in connection with fresh fruit. Madden declaration, paragraph 2, 31 TTABVUE. For at least 90 years,

Opposer has used the SUNKIST mark with beverages offered directly to consumers by Opposer or through various licensees. Holme declaration, paragraphs 3, 4, 8, 9, 28 TTABVUE. Opposer's United States sales revenues of fresh fruit and beverages are confidentially provided and are substantial; Opposer offers its fresh fruit and beverage products across the United States. Madden declaration, paragraphs 6, 18, 31 TTABVUE; Dabrowski declaration paragraphs 11, 22, 33 TTABVUE. Other SUNKIST branded food products include confectionaries, freeze dried fruit, fresh cut fruit, frozen fruit, frozen snacks, a range of nuts, sauces, marinades, and trail mix which also are offered across the United States. Madden declaration, paragraph 6, 31 TTABVUE. Opposer also sells SUNKIST branded juicers. Madden declaration paragraph 12, 31 TTABVUE.

Opposer's witnesses have provided testimony (some with exhibits) relating to advertising, including advertising from the 1950s and 1960s, past promotional partnerships in television, movies, a My Space concert series, and a 25-year partnership with Disneyland which ended in the 1990s. Holme declaration, paragraphs 14-16, 28 TTABVUE; Madden declaration, paragraphs 15-17, 31 TTABVUE; Dabrowski declaration, paragraphs 13, 14, 16, 17, 18, 33 TTABVUE. Also in the record are historical newspaper advertisements, but we have no specific testimony relating to these advertisements and their circulation.[36] Opposer's second notice of reliance, 29 TTABVUE.

---

[36] The newspaper advertisements range from the 1916/1917, the 1920s, the 1930s, 1950s, 1960s, and 1970s, with the majority from the 1950s and 1960s. Many of the advertisements are grocery advertisements. Some advertisements are not full page, half page or quarter page, and some of these advertisements appear to be placed in small circulation newspapers.

Much of the witness testimony relating to Opposer's promotions for its fresh fruit and carbonated beverages is lacking specifics as to time periods, frequency, and audience reach to show exposure and impact on the general consumer. Opposer did confidentially provide marketing expenditures for fresh fruit for the 2013 to 2021 period, Madden declaration, 30 TTABVUE, but they are much smaller than other Board cases where we have found dilution fame. *See, e.g., Chanel, Inc. v. Makarczyk*, 110 USPQ2d at 2020-21 (advertising expenditures of $275 million between 2000-2007 and $200 million between 2009-2012 found to be substantial and to support a finding that the opposer's CHANEL mark was famous for purposes of dilution). As to the advertising for the licensee of the SUNKIST carbonated soda beverages, as indicated in the discussion regarding commercial strength, we do not have separate advertising and marketing figures, because Opposer's licensee Keurig Dr. Pepper does most marketing in-house and groups these expenditures with other expenses such as innovation, trade support and distribution.[37]

Opposer did not introduce any media evidence showing widespread recognition of Opposer's mark to the general population. Opposer also relies on a third-party survey relating to its beverage dispensing services, but the survey report is undated and is hearsay. Nor did Opposer proffer a witness with first-hand knowledge to explain the survey, the design, the questions, and whether, for example, the questions were aided or unaided. Opposer also relies on industry and third-party data that it subscribes to

---

[37] There is some information from confidential business records about the reach of a 2018 marketing campaign in connection with the regional Big East basketball tournament. Holme declaration, 27 TTABVUE.

in connection with its SUNKIST branded carbonated citrus soda to support dilution fame. However, the industry and third-party data relied upon is hearsay, and Opposer did not proffer a witness to testify about how these figures were derived for market position, brand awareness, and the frequency that Opposer's carbonated soda beverages are in United States consumers' homes.

In view of the insufficiencies discussed above (relevant to factors i and iii under the TDRA), Opposer's evidentiary record in this case falls short of establishing dilution fame of SUNKIST by the relevant date. We find, on the basis of the record as a whole, that Opposer did not show by a preponderance of the evidence that SUNKIST had become "a household term [with] which almost everyone is familiar" before the relevant date. *TiVo Brands,* 129 USPQ2d at 1113 (quotation omitted).

Because Opposer failed to prove the threshold element of its dilution claim, we need not consider the other elements of Opposer's dilution by blurring claim.

**Decision**:

The opposition is dismissed as to the likelihood of confusion claim and as to the dilution claim with respect to Application Serial Nos. 88647761 and 88647766.

ESTTA Tracking number: **ESTTA1325355**

Filing date: **11/29/2023**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 91254647 |
| Party | Plaintiff<br>Sunkist Growers, Inc. |
| Correspondence address | LEIGH ANN LINDQUIST<br>SUGHRUE MION, PLLC<br>2000 PENNSYLVANIA AVENUE NW<br>SUITE 9000<br>WASHINGTON, DC 20006<br>UNITED STATES<br>Primary email: llindquist@sughrue.com<br>Secondary email(s): tm@sughrue.com, vmullineaux@sughrue.com<br>202-293-7060 |
| Submission | Appeal or Cross-Appeal of Final Board Decision |
| Notice of appeal to | U.S. Court of Appeals for the Federal Circuit |
| Certificate of service | The undersigned hereby certifies that a copy of this submission has been served upon all parties, at their address of record by Email on this date. |
| Filer's name | Leigh Ann Lindquist |
| Filer's email | llindquist@sughrue.com, tm@sughrue.com, vmullineaux@sughrue.com |
| Signature | /Leigh Ann Lindquist/ |
| Date | 11/29/2023 |
| Attachments | H00393_Notice of Appeal executed.pdf(1261179 bytes ) |

FORM 5. Petition for Review/Notice of Appeal of an Order or Decision of an Agency, Board, Commission, Office, Bureau, or the US Court of Federal Claims (vaccine appeals only))

Form 5
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## PETITION FOR REVIEW/NOTICE OF APPEAL

Notice is hereby given that the petitioner(s)/appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Originating Tribunal *(Name of Agency, Board, Commission, Office, Bureau, or Court whose decision is being appealed)*:     Trademark Trial and Appeal Board

Case number being appealed:     91254647

Case title being appealed:     Sunkist Growers, Inc. v. Intrastate Distributors, I▉

Date of final decision or order being appealed:     09/30/2023

Date decision or order was received:     09/30/2023

☑  I have attached a copy of the decision or order being appealed.

**List all Petitioners/Appellants** (List each party filing this appeal.  Do not use "et al." or other abbreviations.  Attach continuation pages if necessary.)

Sunkist Growers, Inc.

Date: 11/29/2023

Signature: /Leigh Ann Lindquist/

Name: Leigh Ann Lindquist

Address: Sughrue Mion PLLC

2000 Pennsylvania Avenue NW 9th Floor

Washington, DC 20006

Phone Number: (202) 663-7409

Email Address: llindquist@sughrue.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2023, I served the foregoing **NOTICE OF APPEAL** by causing a copy thereof to be sent via first class and electronic mail to the following address:

Michael O. Cummings
CUMMINGS, MCCLOREY, DAVIS AND ACHO, P.L.C
1185 Avenue of the Americas, 3rd Floor
New York, NY 10036
*mcummings@cmda-law.com, michael.cummings@mocummings.com*

I further certify that on this 29th day of November, 2023, I served the foregoing **NOTICE OF APPEAL** via hand delivery to the following:

Office of the General Counsel
United States Patent and Trademark Office
10B20, Madison Building East
600 Dulany Street
Alexandria, Virginia  22314

I further certify that on this 29th day of November, 2023, I served the foregoing **NOTICE OF APPEAL** via electronic filing to the U.S. Court of Appeals for the Federal Circuit, as required by the Court's rules.

<u>            /Leigh Ann Lindquist/            </u>
Leigh Ann Lindquist