**24-1212**

# United States Court of Appeals
# For the Federal Circuit

SUNKIST GROWERS, INC.,

*Appellant,*

-v.-

INTRASTATE DISTRIBUTORS, INC.,

*Appellee*

On Appeal from the United States Patent and Trademark Office
Trademark Trial and Appeal Board
Opposition No. 91254647

**BRIEF FOR APPELLEE**

MICHAEL O. CUMMINGS
CUMMINGS, MCCLOREY, DAVIS
& ACHO, P.C.
1185 Avenue of the Americas, 3rd Fl.
New York, NY 10036
(212) 547-8810
mcummings@cmda-law.com

*Counsel for Appellee*

April 22, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1212

**Short Case Caption** Sunkist Growers, Inc. v. Intrastate Distributors, Inc.

**Filing Party/Entity** Intrastate Distributors, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 4/22/2024

Signature: /s/*Michael O. Cummings*

Name: Michael O. Cummings

**FORM 9. Certificate of Interest** **Form 9 (p. 2)**
**March 2023**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Intrastate Distributors, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| [only appearing counsel] | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES ..........

STATEMENT OF RELATED CASES .......... 1

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE CASE .......... 2

A. OVERVIEW OF THE MARKS .......... 2

B. OVERVIEW OF THE DISPUTE .......... 2

SUMMARY OF THE ARGUMENT .......... 3

ARGUMENT .......... 4

I. STANDARD OF REVIEW .......... 4

II. OVERVIEW OF THE BOARD'S FINDINGS .......... 5

III SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF DISSIMILARITY OF THE MARKS .......... 9

IV. .......... SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF LACK OF ACTUAL CONFUSION .......... 14

V. ........ THE BOARD'S RELATIVE WEIGHING OF THE DUPONT FACTORS IS CORRECT .......... 14

CONCLUSION .......... 16

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## CASES

,

*See Burns Philp Food, Inc. v. Modern Prods., Inc.*, 1 F.3d 1252, 28 USPQ2d 1687 (Fed. Cir. 1993)....1, 11,

*Cunningham v. Laser Golf Corp.,* 222 F.3d 943 (Fed. Cir. 2000). ....1, 2, 11, 12

*In re Bayer Aktiengesellschaft*, 488 F.3d 960 (Fed. Cir. 2007)....1, 11,

*In re Davia*, 110 USPQ2d 1810 (TTAB 2014) ....1, 11, 12

*In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973)....2, 11, 12

*In re Viterra Inc.*, 671 F.3d 1358 (Fed. Cir. 2012) ....1, 11,

*On–Line Careline, Inc. v. Am. Online, Inc.,* 229 F.3d 1080 (Fed.Cir.2000)....1, 11,

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369 (Fed. Cir. 2005). ....1, 11,

*StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327 (Fed. Cir. 2014). ....1, 11,

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). ....1, 11,

*Vornado, Inc. v. Breuer Elec. Mfg. Co.,* 390 F.2d 724 (C.C.P.A. 1968) ....1, 11,

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065 (2000)....1, 11,

## STATEMENT OF RELATED CASES

Appellee Intrastate Distributors, Inc. ("IDI") is unaware of any cases related to this appeal.

## JURISDICTIONAL STATEMENT

Omitted per Federal Circuit Rule 28(b).

## STATEMENT OF THE ISSUES

Whether the Trademark Trial and Appeal Board erred in finding that no likelihood of confusion exists between Intrastate's applied-for KIST marks and Opposer Sunkist Growers, Inc.'s ("Sunkist") registered SUNKIST marks.

More specifically:

1. Whether substantial evidence supports the Board's findings of
   a) dissimilarity between IDI's applied-for marks and Sunkist's registered marks, and
   b) lack of actual confusion; and
2. Whether the Board erred in balancing the *DuPont* factors to find that there was no likelihood of confusion.

## STATEMENT OF THE CASE

### A. Overview of the Marks

The Opposition involves IDI's two applications, one for a standard character mark and one for a stylized mark, that both contain the word "KIST" (the "KIST

marks").[1] In opposition of IDI's applications, Sunkist relied on 16 of its registered marks (standard character and typed drawing, stylized, and word and design marks) that all contain the word "SUNKIST" (the "SUNKIST marks").[2] The Board accordingly focused its analysis on the two words, KIST and SUNKIST. Appx. 11-12.

### B. Overview of the Dispute

This appeal comes before the court following the Board's dismissal of Appellant Sunkist's opposition after a finding that there was no likelihood of confusion between IDI's applied-for KIST marks and Sunkist's SUNKIST marks. The Board considered several of the factors set forth in *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973) ("the DuPont factors"). Specifically, the Board found that dissimilarity of the marks and lack of actual confusion weighed against the likelihood of confusion while similarity of goods, similarity of trade channels, conditions of sale, and the strength of Sunkist's marks weighed in favor. Balancing these factors, the Board determined that there was no likelihood of confusion and dismissed the opposition.

---

[1] Application Serial Nos. 88647761 and 88647766, respectively.
[2] The Board has described IDI's applied-for marks and Sunkist's registered marks at pages 1 through 4 of its Opinion. Appx. 1-4. These are not in dispute.

Sunkist appeals the Board's ruling on the grounds, *inter alia*, that its findings of the dissimilarity of the marks and lack of actual confusion are not supported by substantial evidence. Further, Sunkist argues that the board erred in balancing the factors for and against the likelihood of confusion. IDI herein opposes the appeal on the basis, first, that the Board's factual findings on the *DuPont* factors are supported by substantial evidence and that Sunkist's arguments to the contrary constitute an erroneous request of this Court to conduct a *de novo* review of the fact findings. Further, IDI contends that the Board did not err in relying primarily on the dissimilarity of the marks and lack of actual confusion in its weighing of the *DuPont* factors to conclude that there was no likelihood of confusion.

## SUMMARY OF ARGUMENT

The Board's factual findings for the *DuPont* facts weighing against the likelihood of confusion between the KIST and SUNKIST are clearly supported by substantial evidence. In particular, the Board's finding of dissimilarity of the marks, based the dictionary definitions of the phonetic equivalents for the marks, "kissed" versus "sun-kissed", which are overwhelmingly supported by marketing, registration and trade dress evidence, clearly supports the conclusion of no likelihood of confusion.

## ARGUMENT

### I. STANDARD OF REVIEW

Likelihood of confusion is a legal determination based on underlying factual findings. *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 945 (Fed. Cir. 2000). In an appeal from Trademark Trial and Appeal Board (hereinafter "Board") in an opposition proceeding, the Federal Circuit reviews the factual findings of the Board- in particular, its factual findings regarding each of the *DuPont* factors for substantial evidence. *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, , 1371 (Fed. Cir. 2005). "Substantial evidence is more than a mere scintilla' and [is] such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *In re Viterra Inc*., 671 F.3d 1358, 1361 (Fed. Cir. 2012) (internal quotation marks omitted); accord *Palm Bay Imps*., 396 F.3d at 1371 ("Evidence is substantial if a reasonable person might find that the evidentiary record supports the agency's conclusion") (internal quotation marks omitted). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007). "A review for substantial evidence 'involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *On–Line*

*Careline, Inc. v. Am. Online, Inc.,* 229 F.3d 1080, 1086 (Fed.Cir.2000); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Board's legal conclusions-including its weighing and balancing of the DuPont factors in the course of arriving at its determination of whether likelihood of confusion is present-are reviewed *de novo* . *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014). The Opposer bears the burden of proving its claim of likelihood of confusion by a preponderance of the evidence. Cunningham, 222 F.3d at 950.

## II. OVERVIEW OF THE BOARD'S FINDINGS

As noted above, the Board focused on the standard character/word aspect of each of the KIST and SUNKIST marks. Appx. 11-12.

The Board reviewed each of the *DuPont* factors that the parties had presented evidence on. The Board found that four of the factors weighed in favor of likelihood of confusion: 1) similarity of the goods, Appx. 12-13; 2) similarity of trade channels, Appx. 13-14; 3) conditions of sale, Appx. 14; and 4) strength of the SUNKIST marks. Appx. 15-21. The Board then found that two of the factors weighed against likelihood of confusion, dissimilarity of the marks and lack of actual confusion. Appx. 22-26 and 26-30.

### A. The SUNKIST Mark is the Phonetic Equivalent of "Sun-Kissed"

As part of its review of the strength of the SUNKIST mark, the Board reviewed its "intrinsic nature, that is, where it lies "along the generic-descriptive-suggestive-arbitrary (or fanciful) continuum of words." Appx. 15-16 (citing *In re Davia*, 110 USPQ2d 1810, 1814 (TTAB 2014); and *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1068 (2000)). As part of this review, the Board determined that "SUNKIST" was the phonetic equivalent of "sun-kissed", citing Sunkist's own statement in its brief in support of its opposition. Appx. 16 (quoting Sunkist stating "SUNKIST suggests that the fresh fruit offered under the mark is kissed by the sun or sun kissed.").

The Board then took note of the dictionary definition of "sun-kissed" as ": having plenty of bright sunlight :sunny." *Id.* 16-17. The Board thus concluded:

> We find that SUNKIST, which Opposer indicates is phonetically equivalent to "sun-kissed," has a somewhat suggestive meaning, as it suggests the sunny growing conditions in California for Opposer's citrus fruit. This suggestion is confirmed by historical advertising and recent digital advertising provided by Opposer which touts the California sunshine under which Opposer's citrus fruits are grown.

*Id.* 17, n. 28 (citing to "Text from current and historical advertising" by Sunkist).

### B. Dissimilarity of the Marks

The Board first noted that both the KIST and SUNKIST "marks are similar in appearance and sound to the extent they both contain the term KIST." Appx. 23. The Board went on to note, however, that they are also dissimilar:

> both Opposer and Applicant are in agreement that KIST, the entirety of Applicant's mark and the suffix portion of Opposer's SUNKIST mark, can be pronounced phonetically as "kissed," which makes Applicant's mark similar in sound to the KIST suffix portion of Opposer's pleaded mark. The marks are dissimilar in appearance and sound to the extent that Opposer's pleaded mark contains the additional lead word SUN.

*Id.*

In analyzing the connotations of the marks, the Board referred to the dictionary definition of the word "kissed" as ": to touch (someone or something) with the lips especially as a mark of affection or greeting." *Id.* The Board then noted IDI's argument that there is thus a significant difference in connotation between "sun-kissed", which refers to a phenomenon of nature, and "kissed", which refers to an inter-personal human, "romantic or erotic," phenomenon. *Id.* 24.

The Board then considered parties' trade dress associated with the respective marks. The Board cited IDI's KIST mark associated with a lipstick kiss and then the SUNKIST mark associated with the sun. *Id.* 24-26. The Board then concluded:

> Because the commercial impression engendered by KIST is significantly different from the commercial impression created by SUNKIST, and the appearance, sound and connotation are only

> superficially similar, the first DuPont factor weighs against likelihood of confusion.

*Id.* 26-27.

### C. Lack of Actual Confusion

In analyzing actual confusion, the Board first noted that "[t]he record indicates that KIST has been used in connection with carbonated soda beverages at least as early as 2000 . . . ." Appx. 28. In its opposition, Sunkist claimed that there was no significant overlap with the SUNKIST mark and that sales of products with the KIST mark were "small and declining". *Id.* 29. Reviewing these arguments the Board reasoned:

> However, we find that Applicant's sales of the products, although more regional, were and are in overlapping geographic markets with Opposer's products, offered in the same retail stores, and have co-existed in those same geographic markets for a significant period of time. We find that Applicant's sales are not so de minimis that the lack of actual confusion is insignificant.

*Id.*

The Board then concluded:

> Based on this evidence, we find that there has been a reasonable opportunity for confusion to have occurred as the parties sell their carbonated sodas in the same geographic areas and by the same retailers since 2000. Therefore, under the seventh and eight DuPont factors, the lack of any reported instances of confusion weighs against a finding of likelihood of confusion.

*Id.* 30.

### D. Balancing of Factors

In coming to its conclusion of no likelihood of confusion, the Board noted that "[i]n any likelihood of confusion case, any of the factors may play a dominant role." Appx. 30 (citing *DuPont*, 177 USPQ at 567). The Board then concluded:

> We conclude, that despite the legal identity in part of the parties' goods, their identical trade channels, the conditions of sale, and the commercial strength or fame of Opposer's SUNKIST mark, the differences in commercial impression of the marks and the lack of actual confusion over a long period outweigh these factors. We find that Applicant's KIST marks are not likely to cause confusion with Opposer's SUNKIST marks for legally identical in part goods.

*Id.* 30-31.

## III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF DISSIMILARITY OF THE MARKS

Sunkist makes a number of arguments to claim that the Board's finding of dissimilarity of the marks is not supported by substantial evidence. None of these are support its position and several actively contradict it.

Sunkist first takes issue with the Board's citation to the parties' trade dress in its analysis, making three separate arguments. Sunkist first argues that trade dress essentially can never be used in assessing the similarity or dissimilarity of standard character marks. This is a misreading of the case law. The Board relied on the *Burns* case to justify its references to the parties' trade dress:

> In connection with connotation and commercial impression, we can consider the parties' trade dress. *See Burns Philp Food, Inc. v. Modern*

> *Prods., Inc.*, 1 F.3d 1252, 28 USPQ2d 1687, 1690 (Fed. Cir. 1993) ("[T]rade dress can be used as evidence of whether a word mark projects a *confusingly similar or different* meaning or impression.").

Appx. 24.

Sunkist claims "more recent Federal Circuit guidance suggests the Board's reliance on the 1993 Burns case is misplaced", citing to the case of *Vornado, Inc. v. Breuer Elec. Mfg. Co.,* 390 F.2d 724, 727 (C.C.P.A. 1968). Appellant Br. 10. First, *Burns* specifically addresses the *Vornado* case and distinguishes it. *Burns*, 28 USPQ2d, at 1690. [Vornado = applicant, appellant, loser of opposition] More importantly, the facts of the *Vornado* case are inapplicable here. In *Vornado* the applicant attempted to use its own trade dress "in a distinctive and particular style" to claim that its applied-for VORNADO mark weighed against confusion with the opposer's TORNADO mark. *Vornado,* 390 F.2d, at 727. The court rejected this, noting "the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark." *Id.* Unlike the present case, however, there was no argument in *Vornado* that the applicant's trade dress was indicative of a meaning for applicant's mark that differed from the opposer's. In the present case, in contrast, the Board relied on the parties' trade dress *and Sunkist's registered marks* to confirm the differing meaning inherent in the terms KIST ("kissed"), and SUNKIST ("sun-kissed") themselves. Appx. 24 ("*In connection with connotation and commercial impression*, we can consider the parties' trade dress." (emphasis

added)). It is the combination of the intrinsic meanings of the marks confirmed by extensive use in marketing and registrations that provides the substantial evidence for the differences in "connotation and commercial impression." *Id.* Further, Sunkist's long history of registrations and advertising (*see, e.g.,* Appx. 17, n. 28), which Sunkist itself places great emphasis on (*see, e.g.,* Appellant Br. 2), has confirmed a well-established impression that cannot be change "by the fancy" of Sunkist.

Sunkist next claims the Board's citation to a "single cropped image" relating the KIST mark to a kiss (a well-recognized lipstick shadow) does not constitute substantial evidence and that "[t]here is no testimony evidence regarding when, where or how (or if) the marketing materials were actually used." Appellant Br. 11-12. However, the Board's opinion can be upheld by other evidence in the record, not only that cited in the opinion. *See On–Line Careline*, 229 F.3d at 1086 ("A review for substantial evidence involves examination of *the record as a whole* . . ." (emphasis added)). This evidence includes the testimony of Tim Dabish, IDI's CEO, that explains how marketing materials were used, particularly as store displays and other material supplied to retailers to use (Appx. 1727-30) and several examples of such use. *See* Appx. 2091-96 (Dabish Decl. Ex. F); 2114-18 (Ex. I); 2121-24 (Ex. J); and 2287-96 (Ex. F). Sunkist attempts to dismiss this evidence as "meager" (Appellant Br. 13) but Sunkist fails to provide any analysis as to why this evidence

constitutes nothing more than a "mere scintilla". *See In re Viterra Inc.*, 671 F.3d at 1361. The fact that this marketing evidence also shows other purposes, such as having multiple flavors, does not negate its value as evidence for Board's analysis of the "connotation and commercial impression" of the term "kiss". *See* Appx. 24.

Sunkist next accuses the Board of having "carefully and creatively selected imagery from the record to reach a conclusion regarding the SUNKIST commercial impression" by citing only to evidence "that Sunkist 'markets [its products] to reference the sun'". Appellant Br. 16-17 (citing to the Opinion at Appx 24-26). Sunkist's complaint of the Opinion containing only limited citations again ignores that a "review for substantial evidence involves examination of the record as a whole". *On–Line Careline*, 229 F.3d at 1086. In addition to the images cited by the Board (Appx. 25) and the registrations noted by Sunkist (Appellant Br. 17-19 (citing Appx. 54-58, 142-144, 151-152), the record contains other references to the sun. These include 1) "a Keurig Dr. Pepper presentation" that shows numerous Sunkist products with practically all bearing the "sun" mark (Appx. 321, Holme Decl ¶ 10 and Appx. 1366-95 (Holme Decl. Ex. E)); "printouts from the *sunkistsoda.com* website where the broad range of SUNKIST soda is promoted" (Appx. 1600-01 (Madden Decl. ¶ 7); Appx 1625-36 (Madden Decl. Ex. B)); and "printouts from the jelsert.com website which evidence [Sunkist] licensed products" (Appx. 1602 (Madden Decl ¶ 9); Appx. 1644-46 (Madden Decl. Ex. D)).

Again, Sunkist fails to show why this evidence does not amount to more than a "mere scintilla". *See In re Viterra Inc*., 671 F.3d at 1361.

More importantly, Sunkist itself demonstrates that a vast swath of its own evidence convincingly supports the Board's finding that the connotation of the SUNKIST mark fits the dictionary definition of "sun-kissed". In its brief, Sunkist chides the Board for failing to include the full definition of "sun-kissed" from the dictionary:

> The Board said that is took judicial notice of the Merriam-Webster dictionary to determine that "sun-kissed" means sunny or intense sunshine. Appx23. The Court is encouraged to access that dictionary as that is not the only dictionary definition for sun-kisssed at the Merriam-Webster site. In fact, the second definition is "having an attractive color because of having been in the sun". The Board cherry-picked the dictionary definition to fit a finding. Sunny fruit makes little sense. ***Fruit having an attractive color because of having been in the sun is sensible, and that definition supports Sunkist's arguments***.

Appelant Br. 9, n. 4

Almost all of Sunkist's marketing shows or explicitly references citrus fruit, mostly oranges and some lemons, i.e., "fruit having an attractive color because of having been in the sun". These include: 1) Sunkist's annual reports for 1986 (Appx. 962-1006), for 1947, 1951, 1952 and 1953 (*Id.* 1012-1127), and for 1922 and 1932 (*Id.* 1191-1218); 2) Specimen submitted for U.S. Trademark Registration No. 0301281 (*Id.* 1009-11); 3) Dairy companies' SUNKIST juice packaging and advertising (*Id.* 1162-70); 4) Articles about Sunkist Citrus House (*Id.* 1072-76); 5)

1983 brochure celebrating Sunkist's 75th Anniversary (*Id.* 1078-90); 5) Sunkist-Disney agreement and documents (*Id.* 1473-1489); 6) Printouts from Lyonsmagnus.com (*Id.* 1655-46); 7) Printouts from Sunkistequipment.com (*Id.* 1657-63); 8) Printouts from Sunkist Social Media Accounts (*Id.* 1664-83); and 9) Printouts from Sunkist.com (*Id.* 1684-1699).

There is thus not merely substantial evidence, but overwhelming evidence, that the "connotation and commercial impression" of the SUNKIST mark is the definition of "sun-kissed." See Appx. 24. Accordingly, the Board's findings of dissimilarity between the KIST and SUNKIST marks is supported by substantial.

## IV. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING OF LACK OF ACTUAL CONFUSION

Sunkist's main argument that Board erred in find a lack of actual confusion is is that the Board "failed to review Intrastate's actual sales data" that supposed showed that IDI actions with respect to products with the KIST mark are a "small scale operation with declining sales." Appellant Br. 35. Sunkist then goes on to site a number of sales figures. *Id.* 35-37. Sunkist, again, fails to explain why the evidence fails to constitute "substantial evidence". Sunkist, instead, improperly asks this Court to accept its own conclusion based on the evidence over the Board's. *See In re Bayer Aktiengesellschaft*, 488 F.3d at 970.

## V. THE BOARD'S RELATIVE WEIGHING OF THE DUPONT FACTORS IS CORRECT

Sunkist provides no argument against the fundamental principle that the Boards' finding no likelihood of confusion based on "one *DuPont* factor may be dispositive in a likelihood of confusion analysis, especially when that single factor is the dissimilarity of the marks. *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 47 U.S.P.Q.2d 1459 (Fed. Cir. 1998). As noted above, substantial evidence clearly supports the Boards' finding the KIST and SUNKIST marks are dissimilar based on the difference in definitions of their phonetic equivalents, "kissed" vs. "sun-kissed", and overwhelming record of marketing, registration, and trade dress evidence that supports the difference in these definitions. *See* Section III, *supra.*

Sunkist's argues that the Board erred in weighing of the *DuPont* factors because it "the Board disregarded the well-settled principle that the degree of similarity necessary to support a conclusion of likely confusion declines where, as here, the parties' goods, customers, and trade channels are identical and overlap." Appellant Br. 8 (citing *Century 21 Real Estate Corp. v. Century Life of Am.,* 970 F.2d 874, 23 U.S.P.Q.2d 1698, 1700 (Fed. Cir. 1992)). The Board, however, noted that although Sunkist engages in substantial marketing efforts "we do not have separate figures for marketing or advertising of the carbonated soda beverages." Thus, there

is insufficient evidence to show that the dissimilarity of the marks cannot be controlling.

**CONCLUSION**

Because the Board's factual findings were supported by substantial evidence, and because the Board's weighing of those factors was correct, Applicant respectfully requests that this Court AFFIRM the Board's dismissal of the opposition in this case.

Respectfully submitted,

Dated: April 22, 2024

*/s/ Michael O. Cummings*
Michael O. Cummings
Cummings, McClorey, Davis & Acho, P.C.
Attorneys for Defendants
1185 Avenue of The Americas, Third Floor
New York, NY 10036
(212) 547-8810
mcummings@cmda-law.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rule 32(b ), the undersigned certifies that this Brief complies withapplicable type-volume limitations :

1. The Brief contains ______ words, excluding those parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b ). This number was derived using the "Word Count" feature of Microsoft Word for Windows.

2. The Brief has been prepared in 14-point Times New Roman typeface using Microsoft Word for Windows.

Dated: April 22, 2024

*/s/ Michael O. Cummings*

Michael O. Cummings
Cummings, McClorey, Davis & Acho, P.C.
Attorneys for Defendants
1185 Avenue of The Americas, Third Floor
New York, NY 10036
(212) 547-8810
mcummings@cmda-law.com

*Counsel for Appellee Intrastate Distributors, Inc.*