**No. 2024-1212**

# United States Court of Appeals for the Federal Circuit

SUNKIST GROWERS, INC.,

*Appellant,*

– v. –

INTRASTATE DISTRIBUTORS, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PTO-1:91254647*

## REPLY BRIEF FOR APPELLANT

LEIGH ANN LINDQUIST
SUGHRUE MION PLLC
2000 Pennsylvania Avenue NW
Suite 9000
Washington, DC 20006
(202) 293-7060
llindquist@sughrue.com

*Counsel for Appellant*

MAY 13, 2024

CP COUNSEL PRESS (800) 4-APPEAL • (327906)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The Board Improperly Determined the Marks' Connotations ........ 2

1. The Board Considered the Wrong Dictionary Definitions. ........ 4

2. The Testimonial Evidence Supports a Finding of Similar Connotation ........ 7

3. *Burns* Does Not Apply. ........ 10

B. There Were Limited, if Any, Opportunities for Confusion to Occur ........ 17

C. Intrastate's Arguments Are Non-Persuasive as to KIST Connotation and Lack of Actual Confusion. ........ 19

III. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahold Delhaize Licensing Sarl v. Mindful Foods Corp.*,
2023 T.T.A.B. LEXIS 508 (T.T.A.B. Nov. 20, 2023) ....................................12

*Blue Man Prods. Inc. v. Tarmann*,
75 U.S.P.Q.2d 1811 (T.T.A.B. 2005)....................................................................3

*Burns Philip Food, Inc. v. Modern Prods., Inc.*,
1 F.3d 1252, 28 U.S.P.Q.2d 1687 (Fed. Cir. 1993).......................................10

*Coach Servs. v. Triumph Learning LLC*,
96 U.S.P.Q.2d 1600 (T.T.A.B. 2010), *aff'd* 668 F.3d 1356
(Fed. Cir. 2012)......................................................................................2, 3, 20

*Destileria Serralles, Inc. v. Kabushiki Kaisha Donq d/b/a Donq Co., Ltd.*,
2017 T.T.A.B. LEXIS 473 (T.T.A.B. Dec. 28, 2017)....................................15

*FremantleMedia N. Am., Inc. v. AI LLC*,
2021 T.T.A.B. LEXIS 322 (T.T.A.B. Aug. 27, 2021) ....................................13

*In Re Bayco Prods.*,
2019 T.T.A.B. LEXIS 417 (T.T.A.B. Dec. 17, 2019)....................................14

*In re Bright-Crest, Ltd.*,
204 U.S.P.Q. 591 (T.T.A.B. 1979)....................................................................4

*In re Mello Meats, Inc.*,
2020 T.T.A.B. LEXIS 358 (T.T.A.B. June 8, 2020)........................................4

*In re P.T. Artista Latindo*,
712 Fed. Appx. 993 (Fed. Cir. 2017) ......................................................10, 11

*In re Sears, Roebuck & Co.*,
2 U.S.P.Q.2d 1312 (T.T.A.B. 1987)....................................................................3

*Kenner Parker Toys, Inc. v. Rose Art Indus.*,
963 F.2d 350, 22 U.S.P.Q.2d 1453 (Fed. Cir. 1992)..............................*passim*

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*,
748 F.2d 669, 223 U.S.P.Q. 1281 (Fed. Cir. 1984)...........................10, 11, 14

*Vornado, Inc. v. Breuer Electric Mfg. Co.*,
390 F.2d 724, 156 U.S.P.Q. 340
(C.C.P.A. 1968) ........................................................................... *passim*

**Statutes & Other Authorities**

37 C.F.R. § 2.52(a)........................................................................................15

TMEP § 1207.01(b)(v).....................................................................................3

## I. **INTRODUCTION**

The issue in this appeal is whether or not SUNKIST and KIST both for soft drinks are confusingly similar. The record on appeal shows the following:

- SUNKIST is a well-known mark.
- Sunkist has used the mark SUNKIST for over a century for fresh fruit and for over ninety years for soft drinks.
- There are no third-party registrations or uses for any marks containing SUNKIST or KIST for any goods or services of record.
- The parties' respective goods are identical.
- There is no image of KIST in the marketplace of record.
- KIST sales data exists only from October 2009 to December 2010, and 2014 to 2020, with overall negligible sales with drastic declines.

When the relevant *DuPont* factors are assessed on this record, they overwhelmingly favor Sunkist. The Board, however, erred in its review of the record and assessment of the relevant *DuPont* factors by (1) improperly evaluating the marks' similarity; and (2) ignoring the details of Intrastate's sales data and related testimony.

Intrastate tries to justify the Board's decision by arguing that Sunkist has not shown that the Board failed to rely on substantial evidence to support its finding on the relevant *DuPont* factors. As discussed below, and in Sunkist's moving brief, substantial evidence does not support the Board's findings on this record. Furthermore, the Board erred in its application of the law.

## II. ARGUMENT

### A. The Board Improperly Determined the Marks' Connotations.

It is well established that when assessing connotation and commercial impression, the Board must "consider the nature of the respective goods and services". *Coach Servs. v. Triumph Learning LLC*, 96 U.S.P.Q.2d 1600, 1609 (T.T.A.B. 2010) (citing *TBC Corp. v. Holsa, Inc.*, 126 F.3d 1470 (Fed. Cir. 1997)). In *Coach*, the Board found (and this Court affirmed) that:

> Opposer's COACH mark, when applied to fashion accessories is clearly either arbitrary or suggestive of carriage or travel accommodations (e.g., stagecoach, train, motor coach, etc.) thereby engendering the commercial impression of a traveling bag (e.g., a coach or carriage bag). On the other hand, applicant's COACH marks [as applied to test preparations materials] call to mind a tutor who prepares a student for an examination.

*Id.* (*aff'd* 668 F.3d 1356 (Fed. Cir. 2012)).

This Court favorably cited other Board proceedings in its decision affirming *Coach*. *See Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012) ("*See Blue Man Prods. Inc. v. Tarmann*, 75 U.S.P.Q.2d 1811, 1820-21 (T.T.A.B. 2005) (finding that BLUE MAN GROUP "has the connotation of the appearance of the performers" and that applicant's BLUEMAN mark "has no such connotation for cigarettes or tobacco. Thus, the marks differ in their connotations and commercial impressions"); *see also In re Sears, Roebuck & Co.*, 2 U.S.P.Q.2d 1312, 1314 (T.T.A.B. 1987) (considering CROSSOVER for brassieres and CROSSOVER for ladies' sportswear and finding that, "[a]s a result of their different meanings when applied to the goods of applicant and registrant, the two marks create different commercial impressions, notwithstanding the fact that they are legally identical in sound and appearance")").[1]

Here, the Board completely ignored this principle as does Intrastate. The Board reached a conclusion on connotation by randomly noting definitions for "sun kissed" and "kiss", and then improperly turning to the parties' "trade dress" to

[1] The Trademark Manual of Examining Procedure also provides: "The meaning or connotation of a mark must be determined in relation to the named goods or services." TMEP §1207.01(b)(v). This is simply basic procedure.

support connotations based on those definitions. The Board failed to consider the context of the parties' goods in determining commercial impression.

1. The Board Considered the Wrong Dictionary Definitions.

In the past, the Board discussed the importance of selecting the correct sensible definitions when accessing marks' connotations:

> As to meaning and commercial impression, the marks relate to Applicant's and Registrant's respective products (processed chicken and poultry vs. pork and beef products), such that the term "BARE" suggests the goods have nothing added (such as filler or meat byproducts). In Registrant's marks, "JUST" could mean "only" or "simply" – together, JUST BARE could suggest simply (or only) chicken or poultry, nothing else. ***These are the only definitions of "BARE" and "JUST" that make sense in context.*** That BARE or JUST "may have other meanings in different contexts [as Applicant argues] is not controlling." *In re Carlson*, 91 USPQ2d 1198, 1200 (TTAB 2009) (citing *In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979)).

*In re Mello Meats, Inc.*, 2020 TTAB LEXIS 358, *14 (T.T.A.B. June 8, 2020) (emphasis added).

The only logical approach to determining a mark's connotation is in relation to the party's goods. Here, the Board said only this in relation to the dictionary definitions selected:

> we have judicially noticed [sun kissed] as having a specific dictionary meaning of sunny or intense sunshine… We take judicial notice that "kissed" is

> defined as ":to touch (someone or something) with the lips especially as a mark of affection of greeting."

Appx23. And then the Board noted that Applicant argued that KIST connotes an erotic or romantic kiss. Appx24.[2]

Inexplicitly, the Board **never** mentions the parties' goods in its discussion of "Similarity or Dissimilarity of the Marks". Appx22-27. There was zero consideration of the marks' connotations in relation to the goods. Although the Board includes select mainly black and white images of Sunkist's product packaging[3] (without ever mentioning "soft drinks") in this discussion, it failed to include any image (or mention) of Applicant's goods. Instead, the Board relies on only one arbitrary and cropped image from alleged marketing materials to support its position as to the KIST connotation. The Board never considered the SUNKIST or KIST connotation in relation to soft drinks.

---

[2] This makes the least sense: an erotic or romantic soft drink?

[3] The selection of the black and white images alone is a ground to find a lack of substantial evidence to support the Board's finding regarding the SUNKIST connotation. No customer encounters the SUNKIST product in black and white, and the overwhelming majority of evidence submitted by Sunkist for beverages was for color images – exactly as a consumer encounters soft drinks. Substantial evidence does not support the Board's finding here which relies so heavily on black and white images selected from an internal confidential presentation.

"Sun kissed" as applied to soft drinks clearly suggests a beverage filled with fruit kissed by the sun. Similarly, "kiss" as applied to soft drinks suggests kissed with flavor. Flavor is the important and shared connotation. The Board even found flavor important when considering the fame of the SUNKIST mark for soft drinks: "Opposer's mark is commercially strong for carbonated soda drinks, specifically, ***citrus flavored soda***, and has a high degree of public recognition and renown." Appx21 (emphasis added).

Here, there were multiple definitions available to the Board.[4] Without any consideration of the parties' goods, the Board selected nonsensical definitions to support its finding on connotation.

Substantial evidence does not support the Board's illogical finding on connotation, and the Board failed to apply established legal principles. Commercial impression can only be decided in connection with the parties' goods or services. Here, that did not occur.

[4] Sun-kissed definitions include: having an attractive color because of having been in the sun, while kiss may be defined as to touch (someone or something) gently or lightly. *Merriam-webster.com* accessed on May 9, 2024.

2. The Testimonial Evidence Supports a Finding of Similar Connotation.

Furthermore, the testimonial evidence establishes that the marks have similar connotations for ***soft drinks***. Both parties consider flavor important. Sunkist is the number one selling orange soft drink. Appx1606, Appx1716. Sunkist's licensee testified:

> 9. Keurig and its predecessors have offered Sunkist soft drink in orange, peach, grape, strawberry and pineapple flavors. Keurig has introduced other flavors of SUNKIST soda, such as SUNKIST berry lemonade, SUNKIST strawberry lemonade, and Sunkist Zero Sugar. …
>
> 10. The expansion of the SUNKIST soft drink citrus flavors was years in the making. Keurig spent years developing these flavors which was a very successful development since SUNKIST is the number one citrus based soft in the United States. Today, Keurig continues to innovate and develop new flavors to offer under the SUNKIST brand.

Appx1716.

According to Intrastate, in 2014, it began promoting "several fruit-flavor[ed]" sparkling waters under the KIST mark as well as "two flavors" of soft drinks. Appx1729. "The sparkling water KIST products are sold in several fruit-related flavors." Appx1729.

When one considers the goods – flavored soft drinks – and the marks, SUNKIST and KIST have similar connotations. Both marks evoke images of a beverage kissed with flavor, and these connotations are supported by the testimony evidence of record.

In considering the SUNKIST connotation, the Board appears to rely heavily on marketing materials for SUNKIST citrus fruit. Appx17-18, Appx23. As seen from Sunkist's opening brief, the marketing materials for SUNKIST beverages however are all about flavor. The corresponding Sunkist websites for its beverage products reinforce the significance of flavor: "It's hard to pick a fave flavor of Sunkist Soda deliciousness. Don't worry, you don't have to!" and "Enjoy the unique and refreshing flavors of Sunkist!" Appx1626, Appx1645. None of the marketing materials of record for SUNKIST beverages mention "sunny California" or "warm sunshine" or "sunshine".[5] Appx1625-1663. The overwhelming majority

[5] The Board found one black and white image from an internal confidential presentation that had the heading "The Newest Flavor Under the Sun". Appx25. This presentation was for marketing SUNKIST soft drinks new flavors for a few months in 2019. Appx1367-1395. Reliance on this image to determine the connotation of SUNKIST for soft drinks is misplaced. The ninety years of evidence of record for SUNKIST soft drinks shows flavor as the consistent theme over generations. The oldest evidence of use of SUNKIST for soft drinks mentions the "delicate bouquet and flavor of fresh fruit." Appx1010. The most recent marketing in the form of websites, evidences promotion of the SUNKIST

of testimonial evidence submitted by Sunkist does not reference the sun; this is particularly true for the evidence related to soft drinks and beverages. The Board clearly erred in determining the connotation of SUNKIST for soft drinks; the Board's finding on the connotation of SUNKIST for soft drinks is not supported by substantial evidence.

Even more importantly, there is zero testimonial evidence to support any finding that Intrastate markets its products to refer to a "kiss". Appx1727-1730, Appx2316-2318. Mr. Dabish says this about the eight-page exhibit from which the Board cropped and enlarged the KIST image to support its finding regarding the KIST connotation: "Attached as Exhibit F are pictures and marketing materials showing Kist sparkling water products. As can be [sic] seen, word [sic] 'Kist' on these products is in the stylized format of the '766 application." Appx1729. This the extent of the information available.

Simply referring to a single cropped image from alleged marketing materials with no testimony evidence regarding whether or not the public ever encountered that image is not substantial evidence. Intrastate's vague and unspecific testimonial evidence about a small portion of a marketing piece does not support a

soft drinks flavor. Appx1626-1636. This is the consistent message and connotation for SUNKIST beverages over the years: flavor.

finding that the commercial impression of KIST is a romantic kiss; particularly, where the declarants never mention "kiss".

The Board failed to consider relevant dictionary definitions and failed to consider the testimony evidence in its totality. Substantial evidence does not support the Board's finding on connotation on this record.

3. *Burns* Does Not Apply.

Furthermore, in reaching its conclusion on the marks' connotation, the Board cites to and relies on *Burns Philip Food, Inc. v. Modern Prods., Inc.*, 1 F.3d 1252, 28 U.S.P.Q.2d 1687 (Fed. Cir. 1993). This reliance was misplaced.

As noted in its opening brief, Sunkist referred to a 2017 Federal Circuit decision – *In re P.T. Artista Latindo*, 712 Fed. Appx. 993 (Fed. Cir. 2017) - which casts doubt on the Board's reliance of *Burns*. In a footnote in *Latindo*, this Court said:

> We note that there is language from *Specialty Brands*, to the effect that "[o]rdinarily, for a word mark we do not look to the trade dress, which can be changed at any time . . . . But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression." 748 F.2d at 674. Appellant may suggest that it is inconsistent to examine trade dress for one purpose, but not for another. ***We need not here resolve any apparent anomaly created by the wording in Specialty Brands, since it is well-established that trade dress may not be used to prove absence of confusion.***

712 Fed. Appx. 993, n.2 (emphasis added).

In *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 674, 223 U.S.P.Q. 1281, 1284 (Fed. Cir. 1984), this Court held:

> Ordinarily, for a word mark we do not look to the trade dress, which can be changed at any time. *Vornado, Inc. v. Breuer Electric Mfg. Co.*, 55 C.C.P.A. 858, 390 F.2d 724, 156 U.S.P.Q. (BNA) 340, 342 (1968). ***But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression***. Applicant's labels support rather than negate that of which opposer complains: that SPICE VALLEY inherently creates a commercial impression which is confusingly similar to that of SPICE ISLANDS. When balancing the interests in a famous, established mark against the interests of a newcomer, we are compelled to resolve doubts on this point against the newcomer. *Giant Food, supra*, 710 F.2d at 1571, 218 U.S.P.Q. at 395.

*Id.* at 1284 (emphasis added).

This has been the position of this Court: trade dress is only considered to determine if a word mark in an application projects a confusingly similar commercial impression to the senior's user's mark.

In *Kenner Parker Toys, Inc. v. Rose Art Indus.*, 963 F.2d 350, 22 U.S.P.Q.2d 1453 (Fed. Cir. 1992), this Court found:

> Adding to the overall similarity of the competing marks' commercial impression discussed above is the similarity of trade dress. As this court has stated:

> > Ordinarily, for a word mark we do not look to the trade dress, which can be changed at any time. *Vornado, Inc. v. Breuer Electric Mfg. Co.*, 55 C.C.P.A. 858, 390 F.2d 724, 156 USPQ 340, 342 (CCPA 1968). But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression.
>
> *Id.* at 674. The multitude of similarities in the trade dress of PLAY-DOH and FUNDOUGH products cries out for recognition. The color (dominated by yellow), size, and shape of the packaging for both products is the same. Comparable fictitious characters in a hat adorn the packaging of both products. Both products feature promotions -- discounts, rebates, and the like -- in a circle with serrated edges. The marks themselves appear in coinciding locations on both products' packages. The instructions and color charts on both packages are nearly identical. Both products display a rainbow motif. These trade dress features and more -- original to PLAY-DOH -- have appeared on products bearing the FUNDOUGH mark. The trade dress of the marks enhances their inherently similar commercial impression.

*Id.* at 355-356.

The Board has repeatedly followed the Federal Circuit's precedent on this point. In *Ahold Delhaize Licensing Sarl v. Mindful Foods Corp.*, 2023 TTAB LEXIS 508, 22-23 (T.T.A.B. Nov. 20, 2023), the Board determined "we note that the packaging for Applicant …corroborates that the marks have similar

connotations and commercial impressions", while citing to *Kenner Parker* and *Vornado*.

In 2021, the Board concluded:

> However, ***we must consider the marks as applied-for and as registered, rather than as to how they may appear in actual commercial use***. Here we are considering Opposer's AMERICAN IDOL typed drawing mark, and ***trade dress may not be used to prove that the commercial impressions are different because trade dress may be changed at any time***. *See Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 156 U.S.P.Q. 340, 342 (C.C.P.A. 1968) ("the [advertising] display of the mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark."). *See also B.V.D. Licensing Corp. v. Rodriguez*, 83 U.S.P.Q.2d 1500, 1508 (T.T.A.B. 2007) ("we assess the connotation of applicant's mark from the perspective that consumers will see only that which applicant seeks to register").

*FremantleMedia N. Am., Inc. v. AI LLC*, 2021 TTAB LEXIS 322, *23-24 (T.T.A.B. Aug. 27, 2021) (emphasis added).

In 2019, the Board said:

> ***Whereas trade dress may not be used to prove that trademarks are not similar, trade dress may be used to prove that a word mark projects a similar commercial impression***. As the Court of Appeals for the Federal Circuit has stated:
>
> > Ordinarily, for a word mark we do not look to the trade dress, which can be changed at

> any time. *Vornado, Inc. v. Breuer Electric Mfg. Co.*, 390 F.2d 724, 55 C.C.P.A. 858, 156 USPQ 340, 342 (CCPA 1968). But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression.
>
> *Kenner Parker Toys Inc. v. Rose Art Indus. Inc.*, 963 F.2d 350, 22 USPQ2d 1453, 1458 (Fed. Cir. 1992); *see also Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284 (Fed. Cir. 1984).

*In Re Bayco Prods.*, 2019 TTAB LEXIS 417, 13 (T.T.A.B. Dec. 17, 2019) (emphasis added).

And in 2017, the Board found:

> ***Although we cannot consider extrinsic evidence regarding the manner in which applicant uses its DONQ mark in the marketplace to avoid a finding that confusion is likely***, the same does not necessarily hold true if such extrinsic evidence supports a finding of likelihood of confusion. Indeed, our primary reviewing court has explained that while we do not ordinarily look to trade dress regarding registrability questions, "trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression." *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 223 USPQ 1281, 1284 (Fed. Cir. 1984); *see also Kenner Park Toys, Inc. v. Rose Art Industries Inc.*, 963 F.2d 350, 22 U.S.P.Q.2d 1453, 1458 (Fed. Cir. 1992).

*Destileria Serralles, Inc. v. Kabushiki Kaisha Donq d/b/a Donq Co., Ltd.*, 2017 TTAB LEXIS 473, *42 (T.T.A.B. Dec. 28, 2017) (emphasis added).

These cases evidence that the Board took a radical departure from an established line of cases to reach its conclusion that SUNKIST and KIST have different commercial impressions. The Board improperly looked to Intrastate's marketing materials (not even trade dress) to determine commercial impression.

The reasoning for this long standing reasoning is clear. An application for a standard character word mark provides broad rights if that application matures to registration. The owner of that issued registration is able to use the mark in any font and stylization as well as with any trade dress. The Board and this Court correctly recognize that fonts and stylization and trade dress can change, and that marks are generally not static. *See* Appx22-23 ("Applicant's and Opposer's standard character marks are not limited to any particular font style, size, or color and could be displayed in any manner. Trademark Rule 2.52(a), 37 C.F.R. § 2.52(a). Opposer's standard character pleaded mark also could be displayed in the same stylization as Applicant's stylized KIST mark.").

In fact, the Board could have focused on the following images (along with the actual marketing for SUNKIST beverages) to find similar connotations:







Appx1650, Appx2096.

These products clearly emphasize fruit flavor.  Importantly, this KIST image appears more frequently in the record than the "kiss" imagery selected by the Board and is apparently the KIST trade dress.  Appx2089-2104.  These images are in stark contrast to the Board's finding on connotation.  Most importantly, these images make clear that relying on trade dress to determine a lack of confusion is misplaced.  Trade dress can change at any time, even tomorrow. The Board relied on a moment in time (that may have not existed because there is no evidence that the KIST marketing materials were ever seen by the public) to determine the KIST connotation.

Here, the Board did exactly what it says it is not to do: consider extrinsic evidence of how a mark is used[6] in the marketplace to avoid a finding that confusion is likely. This was err.

B. There Were Limited, if Any, Opportunities for Confusion to Occur.

On this record, there was no significant opportunity for confusion to occur.

Mr. Smith, Intrastate's Sales Manager, does not testify that KIST soft drinks were sold since 2000. He testifies that he promoted the KIST soft drink in 2000. Appx2316. According to him, Intrastate's predecessor "honored" a distribution agreement whereby a different company was entitled to distribute KIST products in a geographic area. Appx2317. He does not say that Intrastate sold any products to that third party. He furthers states that the predecessor "marketed" KIST products. Appx2317. Currently, most of his work is "contacting distributors to encourage them to purchase and distribute" Intrastate products, including KIST soft drinks. Appx2317.

These statements do not support continuous use for twenty years. His only comments about actual sales are: "Some of the larger distributors that purchase Kist products include Value Merchandising Company located in Fort Scott, Kansas

[6] The Board actually went a step further and considered extrinsic evidence that the ultimate consumer perhaps never saw.

and Ingles Markets, Inc. in Asheville, North Carolina. Previously, the Pamida grocery store chain sold Kist products until it merged with Shopko is [sic] 2012". Appx2317. Intrastate's Sales Manager provides no information about actual sales.

Substantial evidence simply cannot support the Board's finding that KIST soft drinks were sold "at least as early as 2000". Appx28. This is not what the testimony says.

Mr. Dabish says Intrastate has continuously used the KIST mark from 2009. Appx1728. Considering this testimony in conjunction with the actual sales data of record (detailed in Sunkist's opening brief) puts this claim into perspective. Specifics are important, and the specifics here (actual sales data) show insignificant and declining sales.

The unimpressive sales data evidences that opportunities for actual confusion to occur were few. Substantial evidence does not support a finding that KIST has been so widely sold in the United States for any period of time that actual confusion would come to the attention of either party.

### C. Intrastate's Arguments Are Non-Persuasive as to KIST Connotation and Lack of Actual Confusion.

The majority of Intrastate's arguments are devoted to distinguishing *Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 156 U.S.P.Q. 340, 342 (C.C.P.A. 1968). As made clear above, this Court and the Board have long taken the position in opposition proceedings that an applicant's trade dress is not to be considered to find a lack of confusion. Nothing Intrastate argues changes this "well-established" line of cases.

Intrastate next addresses the singly cropped image taken from the alleged KIST marketing materials. According to Intrastate, Tim Dabish's testimony "explains how marketing materials were used, particularly as store displays and other materials supplied to retailers, … and several examples of such use."

Mr. Dabish said:

- "Attached as Exhibit F are pictures and other marketing materials showing the Kist sparkling water products"
- "Attaches as Exhibit G are pictures, labels, and other marketing materials of the Kist-glass bottled soda products"

- "IDI providers distributors and retails a number of different display items. Attached as Exhibit J are examples of these display items and some sample invoices for purchase of the display items".

Appx1729-1730. This is the totality of the explanation. Despite Intrastate's arguments, there is no information provided in these statements. Mr. Dabish never testified that any of the materials were used, and if they were used, how they were. This is not substantial evidence of use in the marketplace. Which U.S. distributors received these materials? When? Did the U.S. distributors actually give the materials to retailers so that the general public saw them and then made an association between the carton and the product? Mr. Dabish provides no information. He only says these materials were provided to distributors.

As to Intrastate's argument regarding the SUNKIST connotation, it appears that Intrastate agrees that SUNKIST as applied to soft drinks means flavor: "Almost all of Sunkist's marketing shows or explicitly references citrus fruit." Appellee Br. 13. It is important to remember definitions assist with determining connotation but a literal application of a dictionary definition is not applicable when considering an arbitrary or suggestive mark. *See Coach*, 668 F.3d at 1368-1369 (finding "we find that substantial evidence supports the Board's determination that Triumph's COACH mark, when applied to educational

materials, brings to mind someone who instructs students, while CSI's COACH mark, when used in connection with luxury leather goods, including handbags, suitcases, and other travel items, brings to mind traveling by carriage" and noting the Board found: "Opposer's COACH mark, when applied to fashion accessories is clearly either arbitrary or suggestive of carriage or travel accommodations (e.g., stagecoach, train, motor coach, etc.) thereby engendering the commercial impression of a traveling bag (e.g., a coach or carriage bag). On the other hand, applicant's COACH marks call to mind a tutor who prepares a student for an examination."). Definitions are considered in relation to the goods and may be used to determine what is engendered or brought to mind. Here, SUNKIST as applied to soft drinks brings to mind sun kissed fruit flavor, not sunny or intense sunshine.

Last, Intrastate simply says Sunkist failed to show a lack of substantial evidence supporting the Board's determination on actual confusion. Sunkist's opening brief provides a detailed review of the actual evidence of record. Actual sales figures are important. The only conclusion that are be arrived at after actually looking at the record is that Board lacked substantial evidence on that finding.

## III. CONCLUSION

The Board's decision reflects an inconsistent and improper approach to the law and the evidence of record.

On this record, it is clear that the Board erred in determining the marks' connotations and finding that there were opportunities for actual confusion to occur. To reach these incorrect findings, the Board ignored the substantial Sunkist evidence showing the consistent flavor theme associated with the SUNKIST mark, and created details to support Intrastate's attorney argument that KIST connotes an erotic or romantic kiss, and that there has been long use of the KIST mark for soft drinks.

Substantial evidence does not support the Board's finding on these *DuPont* factors and the ultimate finding of no likelihood of confusion. A review of the record establishes without a doubt that the correct finding here is KIST for soft drinks is likely to be confused with SUNKIST for soft drinks.

Respectfully submitted,

/s/ Leigh Ann Lindquist
Leigh Ann Lindquist
Sughrue Mion, PLLC
2000 Pennsylvania Avenue NW
Suite 9000
Washington, DC 20006
Attorneys for Appellant Sunkist Growers, Inc

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1212

**Short Case Caption:** Sunkist Growers, Inc. v. Intrastate Distributors, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 4,132 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 05/13/2024

Signature: /s/ Leigh Ann Lindquist

Name: Leigh Ann Lindquist

Save for Filing